The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

VALERIE HALEY, on her own behalf and on
behalf of others similarly situated,

11                     Plaintiff,

No. 2:25-cv-01969-BJR

12          v.

**DEFENDANT TOMMY BAHAMA
GROUP, INC.'S MOTION TO DISMISS
AMENDED COMPLAINT**

13    TOMMY BAHAMA GROUP, INC.,

14                     Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL ALLEGATIONS ................................................................................ 2

III.  LEGAL STANDARD ......................................................................................... 5

    A.  Rule 12(b)(6) Motion to Dismiss. ............................................................ 5

    B.  The Commercial Electronic Mail Act. ..................................................... 6

IV.  ARGUMENT ....................................................................................................... 6

    A.  Plaintiff Fails to Allege a CEMA Violation. ........................................... 6

        1.  Plaintiff Does Not Allege She Received Seven Emails in Exhibit A. ................................................................................................. 6

        2.  The Email Subject Lines Are Not False or Misleading. ........................... 7

        3.  Plaintiff Does Not Adequately Allege Tommy Bahama Knew or Had Reason to Know Plaintiff Was Located or Resided in Washington. ................................................................................. 9

    B.  CEMA Violates the Dormant Commerce Clause. .................................. 10

        1.  CEMA Impermissibly Applies to Conduct Occurring Wholly Outside of Washington State. ................................................... 11

        2.  The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct. ...................... 13

        3.  CEMA Is Invalid As Applied. ................................................. 14

        4.  CEMA Is Facially Invalid. ...................................................... 15

    C.  CEMA Excessively Burdens Interstate Commerce. .............................. 16

    D.  CAN-SPAM Preempts CEMA. ............................................................. 17

        1.  CAN-SPAM Preempts CEMA in its Entirety. .......................... 17

        2.  CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. .......... 19

            a.  *Virtumundo* Applies Here. ........................................... 19

            b.  Under Binding Ninth Circuit Law, CAN-SPAM Preempts Strict Liability Claims like Plaintiff's. ......................... 20

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - ii
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

E.      Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It. ...................................................................... 24

F.      Actual and Treble Damages Are Not Available. ................................................. 24

V.      **CONCLUSION** ............................................................................................... 24

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - iii
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiff Valerie Haley ("Plaintiff")'s First Amended Complaint ("FAC") fails to cure the fatal flaws in her original complaint. Plaintiff brings this action under Washington's Commercial Electronic Mail Act ("CEMA") alleging Defendant Tommy Bahama Group, Inc.'s ("Tommy Bahama") emails providing exclusive two-day "early access" to a promotion were misleading because Tommy Bahama later provided general access to that same promotion. Plaintiff does not allege she read, opened, or relied upon any of these emails. And of the eleven emails challenged in the complaint, Plaintiff only alleges she received four.

Tommy Bahama seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) with prejudice for the following reasons:

*First*, Plaintiff fails to allege Tommy Bahama sent emails with misleading subject lines. On their face, the emails accurately announced there were two days of early access to a sale before it was opened to the public. The "early access" emails offered a distinct benefit: a promo code allowing the recipient to "[s]hop and save two days before everyone else." Plaintiff does not, and cannot, dispute this.

*Second*, Plaintiff fails to allege any facts supporting her bare, speculative conclusion that Tommy Bahama knew or had reason to know her email address belonged to a Washington resident, as required to state a claim under CEMA.

*Third*, CEMA is unconstitutional as applied and facially, given it both directly controls and excessively burdens interstate commerce. Because Plaintiff fails to allege she was in Washington when she received the emails at issue, applying CEMA here would unconstitutionally "directly control[] commerce occurring wholly outside the boundaries of [Washington] State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). And because out-of-state entities cannot feasibly weed out individuals currently located *or* residing in Washington to avoid Washington regulation, CEMA facially creates a de facto nationwide standard for commercial email, unconstitutionally and excessively burdening interstate commerce.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth,* CEMA, both in its entirety and as applied here, is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), which regulates commercial email nationwide. 15 U.S.C. §§ 7704(a)(1)–(6)(b)-(d)(5). CAN-SPAM preempts any state law, such as CEMA, that expressly regulates the same issues, 15 U.S.C. § 7707(b)(1), with a narrow exception for state laws that "prohibit[] falsity or deception" in commercial emails. *Id.* § 7707(b)(1). Under Ninth Circuit law, which controls here, CEMA's strict liability framework that focuses solely on an email's subject line, results in its preemption. Moreover, for Plaintiff's claim to survive, she must allege key elements of a traditional tort including materiality, knowledge, or harm to avoid preemption, which she fails to do.

*Fifth*, because Plaintiff's Consumer Protection Act ("CPA") claim rests entirely on her failing CEMA claim, the Court should dismiss both claims.

*Finally*, Plaintiff fails to allege any facts supporting her claim for actual damages or treble damages.

## II.    FACTUAL ALLEGATIONS

Tommy Bahama is a Delaware company with its principal place of business in Georgia. Dkt. 2 Ex. 1.[1] Tommy Bahama was founded in 1992 as an island-inspired brand that has now expanded to include retail stores, restaurants, and a clothing business known for celebrating bright colors and bold patterns. As part of its apparel business, Tommy Bahama periodically announces promotions for discounts on select products.

Plaintiff alleges she is a Washington consumer who received emails from Tommy Bahama with subject lines that "employ various tactics to create a false sense of urgency in consumers' minds." *See* FAC ¶ 4. Plaintiff challenges 11 emails allegedly sent to consumers between December 2022 and August 2025, but she only alleges receipt of the August 2025

---

[1] The Amended Complaint alleges Tommy Bahama is a Washington-based corporation (FAC ¶ 11), but the Court can take judicial notice of "the Washington Secretary of State's business information for [Tommy Bahama] page" reflecting Tommy Bahama's "principal [place of business] in Georgia. *See Heinz v. Amazon.com Inc.*, 2024 WL 2091108, at *2 (W.D. Wash. 2024).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

emails which discuss a "Friends & Family" sale. *Id.* ¶ 74, Ex. A. Copies of the emails are

attached to the Declaration of Lauren Rainwater ("Rainwater Decl.") at Exs. A–E.[2]

On **August 9, 2025**, Tommy Bahama sent emails advertising an "Early Access"

promotion. The email contained a promo code giving recipients access to Tommy Bahama's

"Friends & Family" sale before it is available to the general public. FAC ¶ 41. The challenged

subject lines state: "2 Days Only! Get Early Access to 25% OFF," and "ENDS TOMORROW!

Early Access to 25% Off." *Id.* ¶¶ 41, 44. The body of the emails describe the Early Access event,

and contain the promo code required to participate. Rainwater Decl. Ex. A.



Although the emails indicate that *Early Access* was limited to two days, Plaintiff alleges

the emails were false and misleading because "no sale or promotion was in fact 'ending

tomorrow'" and "consumers could receive 25 percent off as late as August 17, a week after the

end of 'Early Access.'" FAC ¶¶ 43, 46.

On **August 10, 2025,** Tommy Bahama sent emails with subject lines reminding

customers that the Early Access to its Friends & Family sale will end that same day, August 10.

The subject lines state: "Final Day for First Dibs & 25% OFF" and "Final Hours for Early

---

[2] Although the Court need not rely on these exhibits in ruling on this Motion, they are incorporated by reference in the Complaint and subject to judicial notice. *See infra* Section III.A.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 3
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Access to 25% OFF." *Id.* ¶¶ 47, 50. Again, the body of the emails contain the promo code required to participate in the Early Access promotion. Rainwater Decl. Ex. B.

The early access ended on August 10, as accurately stated in the subject line. Plaintiff concedes this point (as she must): "August 10 wasn't the 'final day' for anything … except [for] Tommy Bahama's … '***Early Access***' to a sale." FAC ¶¶ 49, 52 (emphasis added).

Between **August 11 and August 17, 2025**, Tommy Bahama sent emails announcing its Friends & Family sale. *Id.* ¶ 53; Rainwater Decl. Exs. C–E. Unlike the early access sale emails, the emails announcing the general access Friends & Family sale do not provide an exclusive promo code. *Id.* Exs. A–B. The body of each email indicates that the Friends & Family sale runs through Sunday (August 17, 2025). *Id.* Exs. C, E at 1, 9. As advertised, on Sunday, August 17, 2025, Tommy Bahama sent an email marking the last day of the sale with the subject line: "Last Day for 25% Off." *Id.* Ex. D. Plaintiff does not allege that the subject lines of these emails violate CEMA.

Plaintiff alleges the early access promotions in 2023 and 2024 followed a similar pattern. FAC ¶ 55 (identifying emails "deploy[ing] the same … strategy"). For each promotion, Plaintiff alleges that Tommy Bahama announced early access to a promotion with an accompanying exclusive promo code, and later opened the promotion up to all consumers.

Plaintiff also alleges in December 2022, Tommy Bahama sent emails offering time-limited free shipping and asserts that the emails were "untrue" because the offer was later extended. FAC ¶¶ 56–60. However, Plaintiff does not allege that the extension of the free-shipping offer was predetermined. *See id.*

Plaintiff does not allege she received the challenged emails sent in 2022, 2023, and 2024. And although Plaintiff alleges she received the August 2025 emails, she does not allege she ever read or opened the emails, or made any purchases in reliance on them.

Plaintiff further speculates that Tommy Bahama knows where email recipients reside because it "may" have "location information tied to email addresses when consumers make purchases from Tommy Bahama through digital platforms," track IP addresses, purchase

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 4
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

consumer data, or identify email recipients through marketing platforms. *Id.* ¶¶ 64–72. But Plaintiff makes no allegation that Tommy Bahama actually knew or had reason to know that she was a Washington resident at the time she received the emails, much less that she was in Washington when she received the emails.

Plaintiff brings a claim for the violation of the CPA premised on the alleged CEMA violations. *Id.* ¶¶ 95–104. Plaintiff seeks to certify a class of Washington residents "holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A" within the past four years. *Id.* ¶¶ 77–79. She further seeks the greater of actual pecuniary losses or statutory damages of $500 for each purportedly false or misleading email, treble damages, and attorneys' fees and costs. *Id.* ¶ 104.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

On a motion to dismiss, a court may consider materials outside the complaint where the complaint incorporates those materials into the pleading by reference. *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1041–42 (W.D. Wash. 2018). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 5
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  to the document or the document forms the basis of the plaintiff's claim." *United States v.*

2  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3  **B.    The Commercial Electronic Mail Act.**

4  CEMA is a Washington statute that imposes liability on any "person" who initiates or

5  conspires to initiate the transmission of an email "from a computer located in Washington or to

6  an electronic mail address that the sender knows, or has reason to know, is held by a Washington

7  resident that[] . . . [c]ontains false or misleading information in the subject line." RCW

8  19.190.020(1), (1)(b). Although CEMA does not authorize a private right of action, *see Wright v.*

9  *Lyft, Inc.*, 189 Wn.2d 718, 727 (2017), such a violation is a *per se* violation of the CPA, *see*

10 RCW 19.190.030(1), 19.190.100, 19.86 *et seq.*

11 **IV.    ARGUMENT**

12 **A.    Plaintiff Fails to Allege a CEMA Violation.**

13 Plaintiff does not allege facts to show: (1) she received seven of the eleven emails in

14 Exhibit A; (2) the email subject lines were false or misleading; or (3) Tommy Bahama knew or

15 had reason to know Plaintiff is a Washington resident. The Court should dismiss Plaintiff's

16 CEMA claim as a result.

17 **1.    Plaintiff Does Not Allege She Received Seven Emails in Exhibit A.**

18 Plaintiff purports to represent a class of people to whom Tommy Bahama "sent or caused

19 to be sent any email listed in Exhibit A during the Class Period." FAC ¶ 77. But Plaintiff does

20 not allege she received the 2022, 2023, or 2024 emails. *Id.* ¶ 74.[3] She thus cannot assert claims

21 under CEMA based on them, *cf.* RCW 19.190.040 (providing for "[d]amages to the recipient"),

22 and Tommy Bahama need not address them further.

23

24

25

---

26 [3] Plaintiff alleges only that she "received the series of deceptive emails relating to the August

27 2025 'Friends & Family' sale," citing paragraphs 41 through 55 of her amended complaint. FAC ¶ 74. Paragraph 55, however, does not address those emails.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 6
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 2.    The Email Subject Lines Are Not False or Misleading.

Plaintiff fails to allege the requisite "false or misleading information" for any of the challenged emails. *See* RCW 19.190.020(1)(b). The challenged emails thus cannot support CEMA violations.

**August 9 and August 10, 2025 Emails.** Plaintiff alleges the emails sent on August 9 and 10, 2025 are false and misleading because they create a false sense of urgency, misrepresent the timing of the deals, and "do not reflect the true availability of the deal itself." FAC ¶¶ 40–52, 75–76. But the August 9 and 10 emails—which include an early access code in the body of the emails—unambiguously offered only a two-day opportunity for select consumers to be the first to shop Tommy Bahama's discounted inventory before the sale opened to anyone who stumbled into the store or onto the website.

Plaintiff does not allege the early access opportunity lasted any longer than the email's subject line suggests, instead contending that offering "[e]arly [a]ccess" to a promotion is a "sham designed to break up the same 25 percent off sale into two phases." *Id.* ¶ 43. While "consumers could receive 25 percent off as late as August 17, a week after the end of 'Early Access,'" *id.*, the subject line accurately conveys the sale will continue after "early access" expired. The "early access" emails—sent during the two-day window preceding the general sale—offered a distinct benefit: a promo code allowing the recipient to "[s]hop and save two days before everyone else." Rainwater Decl. Ex. A. Early access allowed customers to purchase discounted items before the general public picked over the inventory or before an item sold out. This Court may "draw on its judicial experience and common sense" to conclude that early (and exclusive) access to a sale is an independent benefit different from the sale itself. *See Iqbal*, 556 U.S. at 679; *see also Kinney v. Amazon.com, Inc.*, 2024 WL 867072, at *1–3 (N.D. Ill. 2024) (dismissing complaint challenging value of "[e]arly [a]ccess [s]ale" and noting that plaintiff "was able to participate in exclusive sales like Early Access Day sales by becoming an Amazon Prime member—just as he was promised—and did purchase a television at an exclusive discount").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

On their face, the August 9 and 10 emails merely announced the duration of the two-day early access to the Friends & Family sale: each subject line made clear that "early access"—not the general sale—was time-limited. FAC ¶ 41 ("2 Days Only! Get *Early Access* to 25% OFF") (emphasis added); *id.* ¶ 44 ("ENDS TOMORROW! *Early Access* to 25% Off") (emphasis added); *id.* ¶ 47 ("Final Day for *First Dibs* & 25% OFF") (emphasis added); *id.* ¶ 50 ("Final Hours for *Early Access* to 25% OFF") (emphasis added). Because Plaintiff does not allege the inaccuracy of those announcements, she has not alleged a CEMA violation as to those emails.

**August 11 through August 17, 2025 Emails.**[4] Plaintiff alleges the Friends & Family sale had a "fictitious 'start'" and that Tommy Bahama sent emails between August 11 through 17, 2025 with subject lines that "creat[ed] time pressure in consumers' minds." FAC ¶ 53. But Plaintiff does not (and cannot) allege that the statements in the subject lines were false or misleading. Tommy Bahama provided the advertised 25% discount during the Early Access or Friends & Family sale and then the 25% discount to the general public in the subsequent week. *Id.* Accordingly, the August 11 through 17 emails cannot support a CEMA violation.

**2023 and 2024 Emails.** Although Plaintiff does not allege receipt of the 2023 and 2024 early access emails, her claims with respect to them fail for the same reasons discussed above.

**2022 Emails.** In addition to her failure to allege receipt of the 2022 emails extending a free-shipping offer, Plaintiff's claims with respect to these emails fail for the additional reason that Plaintiff alleges no facts from which the Court could infer that Tommy Bahama decided to extend the duration of the offer before sending earlier emails setting forth an offer expiration date, as necessary to sufficiently allege that those email subject lines were false when sent. She ignores the alternative explanation—that the extension was not predetermined—meaning the email subject lines were not false when sent. "When faced with two possible explanations, only one of which can be true and only one of which results in liability something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *See Prudencio v. Midway Importing, Inc.*, 831 F. App'x

---

[4] The August 11–17 emails are not listed in Exhibit A.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 8
No. 2:25-cv-01969-BJR

808, 810 (9th Cir. 2020) (citation modified). The Court "need not accept the conclusion that [Tommy Bahama] engaged in unlawful conduct when its actions are in line with lawful 'rational and competitive business strategy.'" *See Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844–45 (9th Cir. 2021) (citations omitted); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014).

### 3.    Plaintiff Does Not Adequately Allege Tommy Bahama Knew or Had Reason to Know Plaintiff Was Located or Resided in Washington.

Despite amending her Complaint after receipt of Tommy Bahama's initial Motion to Dismiss, Plaintiff still does not allege Tommy Bahama knew or had reason to know ***Plaintiff's*** email address belonged to a Washington resident, as required for her CEMA claim. RCW 19.190.020(1) (email must be sent from a computer in Washington or the recipient must be a Washington resident).[5] Plaintiff merely speculates that the "sheer volume" of Tommy Bahama's email marketing meant it knew ***some*** recipients were in Washington, or it knew addresses from online purchases, or that it tracked IP addresses, or bought or could have requested the data. FAC ¶¶ 64–72. This unsupported speculation is not enough to state a claim.

*First*, Plaintiff makes no attempt to tie her conclusory assertion of the "volume" of Tommy Bahama's email to her own residency.

*Second*, even assuming that Tommy Bahama receives IP addresses from online purchases or opening emails, *id*. ¶¶ 66–67, Plaintiff does not allege she made any purchase on Tommy Bahama's website; nor does she allege that she opened the emails or that the emails went to her primary inbox (as opposed to some spam folder), let alone while using a Washington IP address. *See generally*, *id.*

*Third*, even if Tommy Bahama could access Plaintiff's IP addresses through a third party vendor or other means and link it to her email, courts have repeatedly cast doubt on the reliability of using IP addresses for geolocation purposes. *See Gutierrez v. Converse Inc*., 2024 WL 2106952, at *17 (C.D. Cal. 2024) (providing that IP addresses did not allow defendant "to make

---

[5] Plaintiff does not allege that the emails at issue were sent from a computer located in Washington.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

a determination as to where the chat users were located"); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. 2014) (declining to rely solely on plaintiff's assertions that jurisdiction and venue were appropriate based on a geolocation of the defendant's IP address).

Plaintiff's new allegations asserting that Tommy Bahama "appears to" utilize third-party Klaviyo to determine location—and incorporating by reference Klaviyo's web pages—reaffirm this point. *See* FAC ¶ 68 & n.1; *see Playtika*, 349 F. Supp. 3d at 1041–42. Klaviyo's webpage confirms that it identifies location from billing or shipping addresses only where an account has made a purchase. Ex. K at 1. Otherwise, Klaviyo relies on "IP geolocation," which it concedes "can sometimes be inaccurate." *Id.* at 2; *see also id.* (postulating that an email opened by a California resident in China would yield an IP geolocation in China).

*Finally*, Plaintiff's remaining datapoints reference her speculative and conclusory assertions that Tommy Bahama "may" purchase or obtain the data through other third-party companies or the email's domain registrant. FAC ¶¶ 69–71. Plaintiff has not plausibly alleged Tommy Bahama receives or could receive residence data through these means. *See Iqbal*, 556 U.S. at 678 ("[T]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

Because Plaintiff fails to plausibly allege that Tommy Bahama knew, or had reason to know, that her email address was held by a Washington resident, she fails to allege any CEMA violation.

### B.    CEMA Violates the Dormant Commerce Clause.

Even if Plaintiff stated a claim for a CEMA violation, Plaintiff's CEMA claim violates the dormant Commerce Clause—as applied and on its face—because, by imposing liability based solely on the email recipient's residence, it applies to individuals located outside of Washington who received emails from a commercial sender also outside of Washington.

A state may not directly regulate conduct that takes place wholly outside of its borders. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003), even with "some nexus" to that state. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 609, 615 (9th Cir. 2018). Under the

Commerce Clause, states are prohibited from directly "control[ling] commerce occurring wholly outside [its] boundaries." *Healy*, 491 U.S. at 335–36. Such control "exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* at 336. Similarly, the Due Process Clause limits a state's ability to regulate conduct occurring extraterritorially. *See Watson v. Emps. Liab. Assurance Corp.*, 348 U.S. 66, 70 (1954) (recognizing "the due process principle that a state is without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries").

In a decision concerning the reach of the dormant Commerce Clause, the U.S. Supreme Court reaffirmed the longstanding principle that laws may not "*directly* regulate[] out-of-state transactions by those with *no* connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374, 376 n.1 (2023). "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 336. "States may not mandate compliance with their preferred policies in wholly out-of-state transactions . . . ." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013).

By imposing liability solely on a recipient's Washington residence—but not location—CEMA sweeps in commercial emails in which both the sender and recipient are located outside of Washington state, and is therefore unconstitutional.

### 1. CEMA Impermissibly Applies to Conduct Occurring Wholly Outside of Washington State.

CEMA does not limit its application to companies sending emails ***from*** Washington or emails ***received in*** Washington. Instead, it regulates emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident . . . ." RCW19.190.020(1). CEMA thus imposes restrictions on a company incorporated in Delaware and based in Georgia (like Tommy Bahama) on its

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 11
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

transmission of emails to a person in New York (for example) who is nonetheless a Washington resident. Application of CEMA to these circumstances exceeds the territorial limits of its authority.

In *Sam Francis Foundation v. Christies, Inc.*, a California statute regulated art sales where "the seller resides in California *or* the sale takes place in California." 784 F.3d 1320, 1323 (9th Cir. 2015). Because the statute imposed liability based on *residency* of the seller, the Ninth Circuit determined that "the state statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders,'" and, thus, violated the dormant Commerce Clause." *Id.*

The Ninth Circuit further explained:

> [I]f a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id.* at 1323.

The same is true for state statutes that directly regulate communications. In *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 599 (W.D. Wash. 2013), this Court declined to interpret the Washington telemarketing statute as applying to calls "that were both initiated and received outside the State of Washington" because such an interpretation "would render the statute unconstitutional by virtue of the dormant Commerce Clause." *See also Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (W.D. Wash. 2015) (same); *see also Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017) (plaintiff likely to win dormant Commerce Clause challenge over California statue that prohibited out-of-state party from transferring certain information "even if [plaintiff] and the recipient have no connection to California or the transfer 'takes place wholly outside of the State's borders'"); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 163, 169 (S.D.N.Y. 1997) (New York Law that made it illegal to conduct certain communications "represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Conversely, where courts have upheld anti-spam statutes facing constitutional challenges, they have done so only after interpreting those statutes as applying to emails that were sent from or received in the state. *See Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1265 (2002) (holding that a state law regulating unsolicited email applied only to California residents receiving email through equipment located in California); *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 525–26 (Md. Ct. Spec. App. 2006) (upholding a law prohibiting emails containing false information to a Maryland email address, as the regulation applied only to emails that used a computer in Maryland or were sent to an address in Maryland).

Further compounding the issue, under CEMA, residency is keyed to whether "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," which may have outdated or inaccurate residency information. *See* RCW 19.190.020(2). In such cases, CEMA purports to directly regulate, for example, the conduct of Tommy Bahama sending commercial emails to a California resident who created an email address while attending college in Washington twenty years ago.

As applied to emails that are both sent and received wholly outside of Washington's borders, CEMA is therefore unconstitutional.

## 2. The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct.

Although the Washington Supreme Court rejected a dormant Commerce Clause challenge to CEMA more than two decades ago, in *State v. Heckel*, 143 Wn.2d 824 (2001), that decision is distinguishable. It also acknowledged that applying CEMA to prohibit conduct occurring wholly outside of Washington would pose a "jurisdictional question"—one the court expressly declined to answer. *Id.* at 839.

CEMA was enacted in 1999 and *Heckel* was decided in 2001, when most people received emails at their home computers via dial-up internet, meaning their residence was synonymous with the location at which they received emails. *See* H.B. Rep. HB 2752 ("Many consumers connect to the Internet through interactive computer services that charge fees for time spent utilizing a ***dial-***

*up connection* to their computer server.") (emphasis added).[6] The legislative history reflects that CEMA was intended to apply only to emails either sent to or received from a computer "located in Washington." *See* S.B. Rep. SB 6434 ("Transmissions of unsolicited electronic mail (e-mail) messages *from a computer located in Washington* or *to a computer located in Washington* . . . .") (emphasis added).[7] It is through this lens that the *Heckel* court rejected the dormant Commerce Clause challenge on the grounds that "there is no 'sweeping extraterritorial effect.'" *Heckel*, 143 Wn.2d at 838–39 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)).

Moreover, the *Heckel* court did not rule out the possibility that CEMA might violate the dormant Commerce Clause if applied to wholly extraterritorial conduct. Although the court dismissed the mere "hypothetical of a Washington resident who downloads and reads the deceptive spam while in Portland or Denver," it did so because the "hypothetical mistakenly presumes that the Act must be construed to apply to Washington residents when they are out of state, a construction that *creates a jurisdictional question* not at issue in this case." *Id.* at 839 (emphasis added). In other words, *Heckel* tacitly acknowledged that if CEMA applies to messages that are sent and received wholly outside of Washington, it could exceed the inherent limits of Washington state's authority.

### 3.    CEMA Is Invalid As Applied.

CEMA is invalid as applied because Tommy Bahama is a Delaware corporation with its principal place of business in Georgia, Dkt. 2 Ex. 1, and Plaintiff does not allege that she was *actually within* Washington when she received any of the emails at issue or that the emails were *sent from* Washington. Indeed, Plaintiff's FAC is conspicuously silent as to her location at the time she received the challenged emails. As a result, Plaintiff apparently seeks to apply CEMA to prohibit an email initiated and received outside of Washington, which would "regulate directly ...

---

[6] *See*, https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/House/2752.HBR.pdf?q=20250912085527

[7] *See*, https://lawfilesext.leg.wa.gov/biennium/1997-98/Pdf/Bill%20Reports/Senate/6434.SBR.pdf?q=20250916135445

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

commerce wholly outside the State," *Edgar*, 457 U.S. at 643, and thus exceed the "territorial limits of state authority" under the Constitution and federal caselaw interpreting it, *Nat'l Pork Producers Council*, 598 U.S. at 376 n.1 (describing *Edgar*). Plaintiff's claim as pleaded therefore rests on a reading of CEMA that violates the dormant Commerce Clause and should be dismissed.

### 4.    CEMA Is Facially Invalid.

CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001). On its face, CEMA regulates conduct by a non-Washington company directed toward a Washington resident, without regard to whether the transaction occurred in Washington. A statute is not immune to facial attack merely because the "statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025). Indeed, "by that logic, a state law policing economic activity *everywhere in the world*—including within the state—would be immune to facial attack." *Id.*

Rather, like the statute challenged in *Sam Francis Foundation*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323. Although CEMA could be applied to purely in-state commercial transactions, which a state may constitutionally regulate, the statute as currently written relies on a residency hook to regulate commercial transactions, and therefore results in regulating transactions outside of Washington. CEMA is therefore facially invalid. *See id.*; *see also Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025) (invalidating statute that "on its face may result in the extraterritorial regulation of settlement agreements in which none of the parties, the agreement, or the pharmaceutical sales have any connection with California" and limiting application to in-state settlement agreements).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C.    CEMA Excessively Burdens Interstate Commerce.**

CEMA independently violates the dormant Commerce Clause by imposing stringent standards regulating commercial emails nationwide contrary to the intent of Congress, excessively burdening interstate commerce. In determining whether to strike down a law on this basis, courts look at (1) whether the state law attempts interstate regulation of a subject of national concern, and (2) the local benefits, if any, of the law. *See Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970). Under both factors, CEMA cannot survive.

Congress rendered commercial email an issue of national concern by passing CAN-SPAM. *See* 15 U.S.C. § 7701(a)(11) (expressing concern that "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply."). CEMA's disparate requirements for commercial emails effectively forces out-of-state businesses to assume CEMA's standards apply to each email they send, violating the Commerce Clause. *See Miller*, 10 F.3d at 639 (finding statute unconstitutional under the dormant Commerce Clause where it would force the plaintiff to adopt Nevada's regulations for use in all states).

Although CEMA limits its application to email addresses that "*the sender knows, or has reason to know*, [are] held by a Washington resident," RCW 19.190.020(1) (emphasis added), the statute defines "reason to know" to require out-of-state businesses to ascertain residency by contacting "the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(2). Requiring businesses to contact an email registrar to ascertain the residency for each email before sending marketing emails is an onerous burden that cannot be dismissed as a burden of noncompliance. This is the type of burden CAN-SPAM sought to avoid. *See* 15 U.S.C. § 7701(a)(11).

Additionally, Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. While Washington may have a legitimate interest in regulating such conduct within its borders, the legislature could draft a narrowed statute

encompassing emails sent from "a computer located in Washington or to" a computer "that the sender knows, or has reason to know," *is located in* Washington. *Contra* RCW 19.190.020(1).

Instead, Tommy Bahama may be forced to apply CEMA's restrictions nationwide in order to comply. This is the very "projection of one state regulatory regime into the jurisdiction of another State" that the dormant Commerce Clause protects against. *Healy*, 491 U.S. at 337. As such, CEMA is facially invalid under the dormant Commerce Clause. *Wash. State Grange v. Wash. State Republican Party*, 552 F.3d 442, 449 n.6 (2008) (holding that a statute is facially invalid where, as here, "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep" (cleaned up)).

## D.    CAN-SPAM Preempts CEMA.

### 1.    CAN-SPAM Preempts CEMA in its Entirety.

Over 20 years ago, Congress enacted CAN-SPAM with the express purpose of "creat[ing] a national uniform standard regarding spam control." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing 15 U.S.C.§ 7701(a)(11)). Congress recognized that businesses faced numerous "disparate" state statutes targeting spam, such as CEMA, that "impose[d] different standards and requirements." 15 U.S.C. § 7701(a)(11). Because email addresses do "not specify a [recipient's] geographic location," it is "extremely difficult" for businesses like Tommy Bahama to both identify and comply with a specific state's laws. *Id.* In place of the former "patchwork" of disparate state statutes, CAN-SPAM created a comprehensive "code of conduct to regulate commercial e-mail messaging practices," and "broadly preempt[ed] state regulation of commercial e-mail with limited, narrow exception," *Virtumundo*, 575 F.3d at 1048. *Id.* CAN-SPAM excepts from preemption only state laws that "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). Considering CAN-SPAM's "text, structure, and legislative purpose," it is clear, as the Ninth Circuit announced, CAN-SPAM's aim was to "save from preemption only 'statutes, regulations, or rules that target *fraud or deception*.'" *Virtumundo*, 575 F.3d at 1061. It was not designed to protect state laws aimed at

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 17
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

penalizing emails with "at best, 'incomplete' or less than comprehensive information" or "technical" violations. *Id.* at 1064.

Under this framework, CEMA cannot stand. CEMA is a strict liability statute imposing liability based solely on an email's subject line. CEMA, as the Washington State Supreme Court reinforced, does not consider the body of the email. *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 592 (2025). This myopic view ignores the body of the email which in most cases provides additional context that eliminates any potential falsity or deception. For example, a subject line reading "Time is Running Out for 20% Off" could be challenged as false or misleading if the sale were to last for longer than the consumer believed the subject line implied. But if the body of the email explained the sale would last for an additional three days, there is no ambiguity, falsity, or deception. CEMA's imposition of liability on these types of subject lines that are, at most, incomplete, flies in the face of CAN-SPAM's intended goal and results in preemption. For this reason, similar statutes in other jurisdictions consider the email in its entirety – not just the subject line. *See, e.g.*, *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *5 (N.D. Cal. 2010) ("A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material."); *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1418 (2014) ("[W]e view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation. We conclude the subject lines' offers of free gifts were not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact, because the e-mail advertisements made it clear that a free gift was conditional upon a purchase." (citation omitted)); *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (allegations of "less than comprehensive information outside the body of an e-mail is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CANSPAM's express preemption clause (and outside the exception)"). A subject line, by its nature, is limited. It cannot—and is not designed to—provide the level of detail contained in an email's body. CEMA's penalization of email subject lines containing incomplete information results in preemption.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 18
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 2.      CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.

Even if CEMA was not preempted in its entirety, Plaintiff's CEMA claim fails for the additional reason that CEMA, as applied here, is preempted.

### a.      *Virtumundo* Applies Here.

Two recent orders in this District held that CAN-SPAM does not preempt the subject-line provision of CEMA. *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 (W.D. Wash. 2025); *Ma v. Nike*, 2026 WL 100731, at *3 (W.D. Wash. 2026). Respectfully, these decisions fail to accord proper weight to the Ninth Circuit's decision in *Virtumumdo*. Both decisions incorrectly conclude that *Virtumundo*'s preemption analysis—which held that CAN-SPAM preempted a claim brought under subsection 1(a) of CEMA—can be disregarded because it was focused on a different section of CEMA, which prohibits email header information that "misrepresents or obscures." RCW 19.190.020(1)(a).[8] But *Virtumundo*'s holding does not limit preemption to subsection (1)(a) as the recent decisions suggest. The Ninth Circuit looked at CEMA in its entirety, discussing both deceptive subject lines and materially false and misleading header information. 575 F.3d at 1062. It recognized "misrepresent"—the standard used in Section 1(a)—is so broad as to "extend CEMA's [] reach" to a "vast array of non-deceptive acts and practices." *Id.* at 1059. For that reason, the court held Subsection 1(a) was preempted.

The same logic applies to Subsection 1(b). It prohibits subject lines that are "misleading." Like the word "misrepresent," the word "mislead" reaches email subject lines that are neither false nor deceptive. *See*, *e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash 2011) ("When an advertisement is not literally false, but is misleading, 'proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.'"); *see also Thompson v. United States*, 604 U.S. 408,

---

[8] In holding CEMA's subject-line provision is not preempted by CAN-SPAM, the *Harrington* court followed the outdated, text-only analysis from *Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005). *See,* 2025 WL 3677479, at *1. But the *Virtumundo* court rejected that analysis and attendant holding that sections 1(a) and 1(b) were not preempted, instead requiring additional scrutiny of the underlying allegations, and holding subsection 1(a) was preempted *based on the claims alleged*. 575 F.3d at 1059, 1062-64.

413 (2025) ("[F]alse and misleading are two different things. . . . [B]asic logic dictates that at least some misleading statements are not false.").

CAN-SPAM's statutory framework supports this distinction. Congress used the terms "false," "misleading," and "deceptive" separately and distinctly throughout CAN-SPAM. *See, e.g.*, 15 U.S.C. § 7701(2), (8) (separately describing "fraudulent or deceptive" messages and messages with "misleading information in the . . . subject lines"); *id.* § 7704(a)(1) ("Prohibition of false or misleading transmission information"), *id.* § 7704(a)(2) ("Prohibition of deceptive subject headings"); *id.* § 7705 ("Businesses knowingly promoted by electronic mail with false or misleading transmission information"). And Congress chose ***not*** to include "misleading" in CAN-SPAM's savings clause. *Id.* § 7707(b)(1) (saving only state laws "prohibit[ing] falsity or deception"). "False/falsity," "deception," and "misleading" thus cannot be viewed as synonymous, an assumption both the *Harrington* and *Ma* courts made that is fatal to their ruling.

Here, to the extent the email subject lines run afoul of CEMA (they do not), unlike the emails addressed in *Harrington* and *Ma,* they cannot be characterized as deceptive or literally false. At most, the emails Tommy Bahama sent could be construed as misleading or "giv[ing] a wrong impression." *mislead*, Mirriam-Webster.com, https://www.merriam-webster.com/dictionary/mislead (last visited Jan. 21, 2026). As the Ninth Circuit determined in *Virtumundo*, words—like misleading—that could "extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices" render this claim preempted. 575 F.3d at 1062.

### b.    Under Binding Ninth Circuit Law, CAN-SPAM Preempts Strict Liability Claims like Plaintiff's.

Regardless of whether *Virtumundo'*s conclusion applies equally to both subsections of CEMA, the Ninth Circuit's construction of CAN-SPAM's preemption clause is binding precedent. CAN-SPAM's narrow preemption exception allows states to regulate only "falsity or deception" in email subject lines. 15 U.S.C. § 7707(b)(1). In *Virtumundo*, the Ninth Circuit grappled with the meaning of this preemption exception. It sought to preserve Congress's twin

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  aims: (1) "to regulate commercial e-mail . . . 'on a nationwide basis,'" and (2) "to save from

2  preemption only 'statutes, regulations, or rules that target *fraud or deception.*'" *Id.* at 1061–62.

3  For that reason, the Ninth Circuit recognized "[i]t would be logically incongruous to conclude

4  that Congress endeavored to erect a uniform standard but simultaneously left states and local

5  lawmakers free to manipulate that standard to create more burdensome regulation." *Id.*

6          To determine whether a state law is more burdensome than CAN-SPAM, the Ninth

7  Circuit began by looking at what CAN-SPAM requires. *Id.* To allege a CAN-SPAM violation for

8  "deceptive subject headings," a party must—at a minimum—allege the sender (1) had "actual

9  knowledge, or knowledge fairly implied on the basis of objective circumstances" that the

10 statement at issue would be "likely to mislead a recipient, acting reasonably under the

11 circumstances" about (2) "a material fact." 15 U.S.C. § 7704(a)(2) ("Prohibition of deceptive

12 subject headings"). And for any violation of CAN-SPAM, a private litigant must allege that (3)

13 the email "*adversely* affected" the recipient. *Virtumundo*, 575 F.3d at 1054 & n.12*; cf.* 15 U.S.C.

14 §§ 7706(f)(1), (9)(g)(1). With this backdrop in mind, the Ninth Circuit went on to explain that to

15 avoid preemption, a state law must—at a minimum—require proof of these same elements.

16 Stated differently, a state law claim must advance certain elements of "traditional tort theories

17 such as claims arising from fraud or deception," or at least consistent with those required to

18 assert a claim under CAN-SPAM for "deceptive subject headings." *Virtumundo*, 575 F.3d at

19 1063.

20          Plaintiff's claims "find no basis in traditional tort theories." *Id.* at 1064. To allow a claim

21 like Plaintiff's to proceed under CEMA without, at a minimum, alleging these basic elements

22 CAN-SPAM requires would improperly allow Washington to create a more burdensome, strict

23 liability scheme for commercial entities. Plaintiff's inability to allege knowledge, materiality, or

24 an adverse effect is an inability to allege "deception or falsity" and cannot survive CAN-SPAM

25 preemption.

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### (1)    Plaintiff Cannot Allege Knowledge.

CAN-SPAM requires a sender to have "***actual knowledge, or knowledge fairly implied***

on the basis of objective circumstances, that a subject heading of the message would be likely to

mislead a recipient, acting reasonably under the circumstances." 15 U.S.C. § 7704(a)(2)

(emphasis added). It would be "incongruous" to allow a claim under CEMA without these basic

allegations. *See Virtumundo*, 575 F.3d at 1063. Plaintiff must allege Tommy Bahama knew the

subject lines were false or misleading when it sent the emails. *Adams v. King Cnty.*, 164 Wn.2d

640, 662 (2008). For the reasons explained above, Plaintiff fails to do so.

Just as in *Virtumundo*, Plaintiff does not allege that Tommy Bahama's "practice is aimed

at misleading recipients," let alone that it knew the subject lines would be likely to mislead a

reasonable recipient. 575 F.3d at 1064.

### (2)    Plaintiff Cannot Allege Materiality.

CAN-SPAM also imposes a materiality component. *Virtumundo*, 575 F.3d at 1062

(requiring more than "immaterial inaccuracies or omissions"). As the Ninth Circuit has held, any

broader construction would "create 'an exception to preemption that swallows the rule and

undermines the regulatory balance that Congress established.'" *Id.* at 1063 (citation modified)

(quoting *Omega World Travel, Inc., v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006)).

And not only must the subject lines be material generally, they must have been material to

***Plaintiff***. Plaintiff does not and cannot allege the subject lines are either.

***First***, Plaintiff fails to allege any false or misleading email subject lines, let alone

***materially*** false or misleading emails. To the extent the subject lines could be creatively

misconstrued as misleading under Washington law, such a tortured interpretation would at most

amount to the kind of "technical allegation[s]" that CAN-SPAM was enacted to prevent. *Martin,*

784 F. Supp. 2d at 1007 ("[L]ess than comprehensive information outside the body of an e-mail

is at best a technical allegation that finds no basis in traditional tort theories and thus falls within

CANSPAM's express preemption clause . . . .").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Second,** for Plaintiff's claims to survive, she must, at a minimum, demonstrate that the allegedly false or misleading subject lines were material **to her**. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167 (2012) (materiality absent because alleged misstatements were not material **to the plaintiff**); *Martin v. Miller*, 24 Wn. App. 306, 309 (1979) (analyzing whether "representations were **material to the plaintiffs' decision** to enter into a purchase and marketing agreement with the defendant") (emphasis added); *Hendrix ex rel. United States v. J-M Mfg. Co.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "**material to [the plaintiff's] decision-making**") (emphasis added); *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 678 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance") (citation modified). She does not.

Even after amending her complaint, Plaintiff still does not allege that she read the subject lines and was induced to make a purchase. Instead, she alleges a hypothetical consumer who reads the email subject lines might be "entice[d] … to engage with Tommy Bahama's marketing efforts for fear of missing out." FAC ¶ 5. This is insufficient to allege materiality as to Plaintiff.

### (3)    Plaintiff Cannot Allege Any Adverse Effect.

Finally, for a private right of action under CAN-SPAM, the statute requires "a showing that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent **actual harm**," i.e., an adverse effect. *Virtumundo*, 575 F.3d at 1054 (emphasis added). Plaintiff still does not plead that she "suffered" any form of actual harm or cognizable damages. Instead, she alleges receipt of the email alone constitutes an injury, without alleging that she read or opened the emails. But merely receiving a misleading email does not "represent actual harm." *See id.*

Similarly, at common law, tort claims generally require some "cognizable injury [that] could have resulted from" the challenged conduct. *Leonard v. McMenamins Inc.*, 2024 WL 4188974, at *10 (W.D. Wash. 2024) (dismissing breach of fiduciary duty and negligence claims relating to data breach where plaintiff failed to show actual damages), *appeal dismissed*, 2025 WL 2948625 (9th Cir. 2025); *Adams*, 164 Wn.2d at 662 (requiring "damages suffered by the

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 23
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

plaintiff" to establish a fraud claim). By asserting a claim without any allegation of injury, Plaintiff seeks to use CEMA to impose a strict liability schedule for sending commercial emails, which is grossly incongruous with CAN-SPAM.

**E.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.**

Finally, because Plaintiff's CEMA claim fails, the Court should dismiss Plaintiff's claim under the CPA. Plaintiff does not allege any of the elements of an independent CPA claim; instead, the CPA claim is predicated exclusively on the alleged CEMA violation. *See* FAC ¶¶ 95–104. Because Plaintiff fails to allege a violation under CEMA, her CPA claim fails. *See, e.g.*, *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1093 (W.D. Wash. 2023) (CPA claim properly dismissed where plaintiff failed to state CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 ("Because [plaintiff's] CEMA claims fail as a matter of law, his CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed.").

**F.    Actual and Treble Damages Are Not Available.**

CEMA provides for statutory damages or actual damages, whichever are greater. RCW 19.190.040(1)–(2). Although Plaintiff seeks both statutory and actual damages, she fails to allege *any* facts suggesting that she sustained actual damages, even after amending her Complaint. "The case law is clear that treble damages may only be based upon actual damages." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990) ("treble damages [under the CPA] are based upon 'actual' damages awarded"); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660 (1983) (reversing award of treble damages because "the failure to show actual monetary damages . . . precludes the recovery of treble damages"). The request for treble damages should be dismissed.

**V.    CONCLUSION**

For the reasons outlined above, the Court should dismiss the FAC with prejudice, as Plaintiff cannot cure the fundamental defects in her claims, and she has already amended the

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  complaint once in response to the initial motion to dismiss. *See United States v. Corinthian*

2  *Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

3  ## VI.  CERTIFICATION OF CONFERRAL

4  Per Section II.F of the Court's Standing Order, Dkt. 7, Tommy Bahama's counsel

5  conferred with Plaintiff's counsel on January 20, 2026 regarding the relief sought through this

6  Motion. Plaintiff opposes the relief Tommy Bahama seeks.

7

8  DATED this 21st day of January, 2026.

9

10  DAVIS WRIGHT TREMAINE LLP

11  By: */s/ Lauren B. Rainwater*
    Lauren B. Rainwater, WSBA #43625

12  Rachel Herd, WSBA #50339
    Emily Parsons, WSBA #57061

13
14  920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610

15  Telephone: 206-622-3150
    E-mail: laurenrainwater@dwt.com

16  E-mail: rachelherd@dwt.com
    E-mail: emilyparsons@dwt.com

17  *Attorneys for Defendant Tommy Bahama*

18  *Group, Inc.*

19  I certify that this memorandum contains 8,397
    words, in compliance with the Local Civil Rules

20  and the Court's order (Dkt. 14).

21
22
23
24
25
26
27

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 25
No. 2:25-cv-01969-BJR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax