The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE HALEY and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

TOMMY BAHAMA GROUP, INC.,

Defendant.

NO. 2:25-cv-01969-BJR

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (2:25-cv-01969-BJR)

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

III.  ARGUMENT ...................................................................................................... 3

     A.   CEMA Does Not Violate the Dormant Commerce Clause ........................................ 3

     B.   CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines ................................................................................................................ 6

          1.   CAN-SPAM exempts consumer protection statutes like CEMA ...................... 7

          2.   The terms "deception" and "misleading" are harmonious ................................ 9

IV.  CONCLUSION ................................................................................................ 11

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - i
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.   INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). CEMA does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. In short, Defendant Tommy Bahama Salon, Cosmetics & Fragrance, Inc.'s ("Tommy Bahama's") arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Tommy Bahama tries to impose on plaintiffs a heightened standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails.

This Court should deny the motion to dismiss, just as other Washington federal courts have done in six recent orders. *See Agnew v. Macys Retail Holdings LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt*, No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Kempf v. FullBeauty Brands Operations LLC*, No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026). No Washington court—

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 1
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

state or federal—has found the challenged portion of CEMA unconstitutional or preempted by CAN-SPAM.

## II.   BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). CEMA does not address the content of emails, and unlike CAN-SPAM, CEMA does not contain disclosure requirements about the commercial nature of the email, the location of the sender, or opt-out procedures. *Compare* Wash. Rev. Code § 19.190.020(1) *with* 15 U.S.C. § 7704. While penalties for a CAN-SPAM violation can total $53,088 per email (plus consumer restitution) as of 2025, *see* Fed. Trade Comm'n, *CAN-SPAM Act: A Compliance Guide for Business* (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business, a violation of CEMA is the greater of $500 or actual damages as of 2026, Wash. Rev. Code § 19.190.040(1).[1] Importantly, CEMA has a private right of action for individual consumers, while CAN-SPAM is enforced by federal agencies, state attorneys general, and certain internet providers. *Compare* Wash. Rev. Code § 19.190.040(1) *with* 15 U.S.C. § 7706.

CEMA was designed to address the local impact of spam email on Washington consumers and businesses. The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess.,

---

[1] Pursuant to H.B. 2274 (2026), the Washington Legislature lowered CEMA's per violation penalty from $500 to $100. The bill is awaiting the Governor's signature as of the date of this brief.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 2
(2:25-cv-01969-BJR)

House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

### III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiffs' response brief. Dkt. 43 at 7-24. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.    CEMA Does Not Violate the Dormant Commerce Clause

Tommy Bahama first argues that CEMA violates the dormant Commerce Clause because: (1) CEMA directly controls commerce occurring outside of Washington's boundaries; and (2) CEMA excessively burdens interstate commerce, under the balancing test established by *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Dkt. 39 at 10-17. These arguments generally fail for the reasons in Plaintiff's opposition brief, Dkt. 43 at 7-15, particularly because the Washington Supreme Court already rejected a dormant Commence Clause challenge to CEMA decades ago. *State v. Heckel*, 24 P.3d 404, 409-13 (Wash. 2001). Both this Court and the Eastern District recently rejected dormant Commerce Clause challenges to CEMA as well.

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 3 (2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Kempf*, 2026 WL 395677, at *5-7; *Shahpur*, 2026 WL 571122, at *4-5. The State endeavors not to repeat Plaintiff's arguments and instead will emphasize a few points.

First, the law is clear that a facial challenge to a statute is highly disfavored and can only succeed if Tommy Bahama meets the incredibly high bar to prove that "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001). Tommy Bahama, relying upon *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025), and *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015), seeks to lessen that burden by asking the Court to rely upon certain hypotheticals. Dkt. 39 at 13-14. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation omitted). Here, the text of CEMA makes clear that the statute "is surely valid in the vast majority of its intended applications," i.e., it applies to spammers using equipment located in Washington and to the receipt of spam by a Washington resident located in Washington. Tommy Bahama's self-serving hypotheticals at the pleading stage are not sufficient to support a facial challenge, particularly in light of the Supreme Court's warning to "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449–50 (2008).

Indeed, Tommy Bahama's hypotheticals about speculative companies in Delaware and Georgia and college students in California underscore why facial challenges are so disfavored. *See id.* at 449, 450-51 (facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). In short, Tommy Bahama's speculative attorney arguments pointedly ignore "the Supreme Court's clear instruction . . . that extreme caution is warranted before a

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 4
(2:25-cv-01969-BJR)

court deploys its implied authority to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025), *cert. denied,* 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (cleaned up).

Second, Tommy Bahama overemphasizes the importance of the alleged extraterritorial impact of CEMA under the dormant Commerce Clause in the interconnected modern economy. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374-75 (2023) ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). The Ninth Circuit aptly noted that while the dormant Commerce Clause is "not yet a dead letter," certainly "it is moving in that direction." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). Thus, the Supreme Court has warned courts to use "extreme caution . . . before . . . deploy[ing] this implied authority." *Nat'l Pork Producers*, 598 U.S. at 390. "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Id.* (quoting *Conway v. Taylor's Executor*, 1 Black 603, 634, 66 U.S. 603 (1862)). There is no substantial, non-speculative extraterritorial impact here, certainly not one rising to a level of constitutional magnitude.

Finally, although both parties discuss balancing under *Pike,* their briefing fails to note that the last time the Supreme Court explicitly invalidated a state statute under *Pike* was in 1982. *See Edgar v. MITE Corp.*, 457 U.S. 624 (1982).[2] Additionally, although both parties speak broadly about the local benefits of CEMA, it is clear CEMA has a connection to Washington, a strong one—it is limited to emails targeting Washington residents, even if some of them temporarily travel outside the state. The Washington Legislature and the Washington Supreme

---

[2] The Court invalidated a state statute under a *Pike*-like balancing analysis in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), but only Justice Scalia's concurring opinion actually cited *Pike* and applied its test.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 5
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Court have identified the legitimate local benefits of CEMA, *see* 1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005) (describing complaints about the growing volume of commercial email); *State v. Heckel*, 24 P.3d 404, 409-10 (Wash. 2001) (detailing local benefits from CEMA), and the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019). Tommy Bahama, as the party bearing the burden here, *id.*, cannot overcome this presumption.

**B.      CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Preemption is a constitutional issue separately warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id.* (cleaned up). Tommy Bahama, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. 11-1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 6 (2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**1.      CAN-SPAM exempts consumer protection statutes like CEMA**

CAN-SPAM was never intended to replace traditional state regulation of unfair and deceptive acts and practices (like CEMA). Although Tommy Bahama wishes the Court to focus on one aspect of CAN-SPAM's intent—the need for national regulations—the company ignores the primary purpose of CAN-SPAM: to reduce the sheer volume of unwanted commercial email messages. In fact, the Senate Report accompanying the bill does not list anything akin to "creating a uniform national system of regulations" among its purposes:

> The purposes of this legislation are to: (i) prohibit senders of electronic mail (e-mail) for primarily commercial advertisement or promotional purposes from deceiving intended recipients or Internet service providers as to the source or subject matter of their e-mail messages; (ii) require such e-mail senders to give recipients an opportunity to decline to receive future commercial e-mail from them and to honor such requests; (iii) require senders of unsolicited commercial e-mail (UCE) to also include a valid physical address in the e-mail message and a clear notice that the message is an advertisement or solicitation; and (iv) prohibit businesses from knowingly promoting, or permitting the promotion of, their trade or business through e-mail transmitted with false or misleading sender or routing information.

S. Rep. No. 108-102, at 1 (2003). In short, CAN-SPAM (like CEMA before it) was consumer protection legislation, not legislation designed to benefit companies that send mass email.

While CAN-SPAM does indeed set some uniform national standards for certain technical issues like opt-out mechanisms, sender identification, and postal address disclosure, none of the national standards in CAN-SPAM relate to traditional consumer protection regulations that addressed unfair and deceptive acts and practices in email:

> The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, **a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted.** Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 7
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

exercise of the Congress's power to regulate interstate commerce that is essential to resolving the significant harms from spam faced by American consumers, organizations, and businesses throughout the United States. This is particularly true because, in contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply. **Statutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway**.

S. Rep. No. 108-102, at 21-22 (2003) (emphasis added). CAN-SPAM also specifically exempts other non-email consumer protection statutes. *Id.* at 22. In short, CAN-SPAM was never trying to "fix" a problem with consumer protection regulations like CEMA. *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 824, 123 Cal. Rptr. 3d 8 (2011) ("The legislative history also makes clear . . . that [CAN-SPAM's] preemption provision was largely intended to target state statutes imposing content requirements on commercial e-mails, while leaving states free to regulate the use of deceptive practices in commercial e-mails in whatever manner they chose.").

It is no surprise then that while CAN-SPAM's preemption clause states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Not only is this consistent with the history of CAN-SPAM, this plain language should end the preemption analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").[3]

---

[3] CEMA predates CAN-SPAM by several years, so the conclusion that CEMA fits squarely into the preemption exemption is further supported by the long-standing rule that

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 8
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**2.      The terms "deception" and "misleading" are harmonious**

As detailed above, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2; *Shahpur*, 2026 WL 571122, at *4 ("The use of the words 'falsity or deception' indicates Congress intended the CAN-SPAM exception to apply more broadly than claims of fraud."); *Kempf*, 2026 WL 395677, at *4, n.8 ("States are expressly permitted [under CAN-SPAM's savings clause] to provide private avenues of relief for false or deceptive commercial e-mails."). This conclusion is supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

To avoid this obvious conclusion, Tommy Bahama relies upon a semantic longshot— that CEMA and CAN-SPAM cannot coexist because the word "misleading" in CEMA is not the same as "deception" in CAN-SPAM, that Congress used the terms "deception" and "misleading" in different parts of CAN-SPAM, and that neither of those two terms rise to the level of falsity. Dkt. 39 at 19-20. In Tommy Bahama's own words, CEMA is preempted by CAN-SPAM because "'False/falsity,' 'deception,' and 'misleading' . . . cannot be viewed as synonymous." *Id.* at 20. This entirely misses the point. All three terms are not intended to be 100% synonymous among themselves because both statutes use disjunctive terms: CEMA prevents the use of "false *or* misleading" subject lines, while CAN-SPAM exempts state statutes that prohibit "falsity *or* deception." Neither statute requires both falsity *and* the next term, so there never has been a requirement that "false" is synonymous with the other two terms.

---

"Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts." *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 9
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Although "falsity" is indeed different than "deception" and "misleading," the latter two terms are harmonious in the consumer protection context. As Tommy Bahama correctly notes, courts have correctly held that falsity is a higher standard than whether something is deceptive or misleading. *See, e.g.*, *Thompson v. United States*, 604 U.S. 408, 413 (2025) ("[F]alse and misleading are two different things. . . . [B]asic logic dictates that at least some misleading statements are not false."); *State v. TVI, Inc.*, 524 P.3d 622, 637 (Wash. 2023) ("As applied to ordinary commercial speech, the CPA allows for deceptive net impression claims because a communication may be deceptive by virtue of the net impression it conveys, even though it contains truthful information.") (cleaned up).

However, it does not follow that misleading and deceptive are materially different concepts that necessarily must be distinct in CEMA and CAN-SPAM. To the contrary, deception and misleading are interrelated concepts, particularly in the consumer protection context. *See, e.g.*, *Sw. Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir. 1986) ("deception" exists under the Federal Trade Commission Act "if there is a representation, omission or practice that is likely to mislead" a reasonable consumer) (emphasis omitted); *State v. Mandatory Poster*, 398 P.3d 1271, 1274 (Wash. App. 2017), *rev. denied*, 404 P.3d 496 (2017) ("An act is deceptive if it is likely to mislead a reasonable consumer.").

The fact that Congress used "deceptive" and "misleading" in different parts of CAN-SPAM supports this conclusion, rather than undermines it. For example, in 15 U.S.C. § 7704(a)(2)'s prohibition of "deceptive subject headings," Congress defined "deceptive" in this context as "misleading," i.e., "that a subject heading of the message would be likely to mislead a recipient . . ." Moreover, the section goes on to incorporate the core provision of the FTC Act (15 U.S.C. § 45), i.e., the prohibition on unfair and deceptive acts or practices. It is well accepted that the FTC Act defines deception and misleading congruously. *See, e.g.*, *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (under the FTC Act, an act or practice is "deceptive" if, among other things, it "is likely to mislead consumers acting

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 10
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

reasonably under the circumstances"). Thus, there is no reason to conclude that the use of term "deception" in CAN-SPAM must—or even should—be read any differently than the term "misleading" in CEMA.

### IV.    CONCLUSION

The State respectfully requests that the Court deny Tommy Bahama's constitutional challenges to CEMA.

DATED this 23rd day of March, 2026.

NICHOLAS W. BROWN
Attorney General

*/s/ Robert Hyde*
BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-474-7744
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum does not exceed fifteen (15) pages in compliance with the Court's Standing Order for All Civil Cases (Dkt. 7).*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS - 11
(2:25-cv-01969-BJR)