The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE HALEY and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

TOMMY BAHAMA GROUP, INC.,

Defendant.

No. 2:25-cv-01969-BJR

**DEFENDANT TOMMY BAHAMA GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 2

        A.     Plaintiffs Fail to Allege a CEMA Violation. ...................................................... 2

               1.     Plaintiffs Cannot Assert Claims for Emails They Did Not Receive. ........ 2

               2.     The Subject Lines Are Not False or Misleading. ..................................... 2

               3.     Plaintiffs Fail to Allege Tommy Bahama Knew Their Emails
                      Belonged to Washington Residents. ......................................................... 4

        B.     CEMA Is Invalid Under the Dormant Commerce Clause. ................................... 4

               1.     CEMA Regulates Entirely Extraterritorial Conduct. ............................... 5

               2.     CEMA Excessively Burdens Interstate Commerce. ................................. 9

        C.     CAN-SPAM Preempts Plaintiffs' Broad Application of CEMA. ...................... 10

               1.     CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject
                      Lines ...................................................................................................... 10

               2.     "Misleading" Is Broader than "Falsity or Deception." .......................... 11

               3.     Plaintiffs Admit They Must Allege Tommy Bahama's Statements
                      Were Material to Avoid Preemption. ...................................................... 13

               4.     Plaintiffs Cannot Allege Knowledge or Injury. ..................................... 15

        D.     Plaintiffs Admit Their CPA Claim Fails. ......................................................... 16

        E.     Plaintiffs' Claim for Actual and Treble Damages Fails. ................................... 16

III.    CONCLUSION ............................................................................................................. 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiffs' and Plaintiff-Intervenor State of Washington's (the "State") oppositions fail to overcome the exposed defects in Plaintiffs' Second Amended Complaint ("SAC").

*First*, Plaintiffs do not dispute that they failed to allege: (1) receipt of certain emails discussed in the SAC; (2) how the early access emails announcing early access to a sale before it was opened to the public were false or misleading when the subject lines themselves make clear the emails are advertising early access; (3) that the promotion extension in a stray email—which Plaintiffs did not allege they received—was predetermined; and (4) that Tommy Bahama had any reason to know that *Plaintiffs'* email addresses belonged to Washington residents. Plaintiffs thus fail to allege Tommy Bahama sent emails with false or misleading subject lines in violation of Washington's Commercial Electronic Mail Act ("CEMA").

*Second*, the State and Plaintiffs overread *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), which rejected a dormant Commerce Clause challenge to a state law with mere extraterritorial *effects*. "The Supreme Court did not curtail the *Baldwin-Healy* line of cases" in *National Pork. Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025). Courts in this Circuit still "follow[] the precedent set in *Sam Francis*," *id.*, which makes clear that a state may not—as CEMA does—*regulate transactions occurring wholly outside its borders*, even if the statute relies on a residency hook. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). Additionally, CEMA's nationwide deterrent effect on commercial emails is excessive compared to any putative local benefits, further violating the dormant Commerce Clause.

*Third*, neither Plaintiffs nor the State show that Plaintiffs' CEMA allegations fall within CAN-SPAM's narrow preemption exception, which bars state regulation of merely *misleading* emails, saving only "traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009). Plaintiffs do not even try to allege knowledge or injury. Most importantly, they fail to allege materiality—which they concede is required to avoid preemption.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 1
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, Plaintiffs concede their Washington Consumer Protection Act ("CPA") claim falls with their alleged CEMA claim. *See* Dkt. 43 ("Plaintiffs-Opp.") at 25.

*Fifth*, Plaintiffs do not dispute that they failed to allege any facts supporting a claim for actual damages, which dooms their claim for treble damages.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Allege a CEMA Violation.

#### 1.   Plaintiffs Cannot Assert Claims for Emails They Did Not Receive.

Plaintiffs acknowledge that the SAC fails to allege receipt *by Plaintiffs* of the 2023, 2024, or December 2022 emails. Plaintiffs-Opp. at 3. Plaintiffs nevertheless insist that these seven emails provide context of a "scheme" of misleading emails and ask the Court to refrain from evaluating the specific allegations in their SAC. *Id.* On a motion to dismiss, the Court *must* look at Plaintiffs' individual CEMA claims. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). Under CEMA, Plaintiffs can bring claims only for emails they received. RCW 19.190.040 (allowing damages "to the recipient" of a violative email). The SAC specifically cabins the universe of emails to those identified in the SAC and Exhibit A. *See* SAC ¶¶ 68, 85. Because Plaintiffs do not allege receipt of these seven emails, Plaintiffs cannot assert a CEMA violation with respect to them.

#### 2.   The Subject Lines Are Not False or Misleading.

On a motion to dismiss, the Court can and should evaluate whether the email subject lines at issue are false or misleading on their face. *See Bontrager v. Showmark Media LLC*, 2014 WL 12600201, at *3 (C.D. Cal. 2014). The SAC alleges two categories of emails: (1) early access to a promotion and (2) extension of a free shipping promotion. Plaintiffs fail to overcome the deficiencies in the SAC with respect to both categories.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 2
(No. 2:25-cv-01969-BJR)

**Early Access Emails.** Plaintiffs only allege receiving the March 14, 2022, and August 9 and 10, 2025 emails.[1] They feign confusion at these "early access" emails, insisting that the "emails falsely claim[ed] that early access to 25% off pricing was ending that day." Plaintiffs-Opp. at 5. They did not. Each subject line unambiguously offered "early access" to a promotion for a select subset of consumers "before everyone else," that is, before Tommy Bahama inevitably expanded the sale *to general audiences*. *See, e.g.,* Dkt. 40, Exs. A ("ENDS TOMORROW! Early Access to 25% Off"), B ("Final Hours for Early Access to 25% OFF") & L ("FINAL HOURS: Early Access to 25% Off"). These subject lines are not false or misleading on their face—the early access to the sale ended as advertised in the subject lines. Indeed, the early access emails included a benefit distinct from the general sale emails: a promo code allowing the recipient to shop before the general public had access to the sale. *Compare id*. Exs. A & L *with id*., Ex. E. As a matter of law, the emails are not misleading. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (plaintiff failed to allege promotion was misleading where "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it").

**Free Shipping.** While Plaintiffs focus on an email extending a free shipping promotion, neither Plaintiff alleges receipt of this email, SAC ¶¶ 79–82, so they cannot assert claims with respect to these emails. *See* II.A.1. Even if they could, Plaintiffs fail to allege the emails were untrue **when sent**. *See* SAC ¶¶ 61–67. Without supporting allegations, Plaintiffs infer that this stray email evidences a scheme of "retailer baiting and switching." Plaintiffs-Opp. at 5. But Plaintiffs must allege facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than allegations "merely consistent" with a favored theory—Plaintiffs must include facts tending to exclude alternative explanations (i.e., that Tommy Bahama extended the promotion after sending

---

[1] Plaintiffs do not allege receipt of the 2023 and 2024 "early access" emails, but they do not dispute that the same reasoning applies to their claims with respect to these emails. *See* Plaintiffs-Opp. at 4–5.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 3
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the initial email). *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014). If anything, Plaintiffs' inability to identify more than one instance of an extension— let alone even one email they received—proves the opposite: a single instance of Tommy Bahama extending a promotion *after the fact*.

### 3. Plaintiffs Fail to Allege Tommy Bahama Knew Their Emails Belonged to Washington Residents.

Plaintiffs claim only that "Tommy Bahama knew it was transmitting marketing emails to Washington residents" in general, but that is not enough. *See* Plaintiffs-Opp. at 7. Plaintiffs must allege Tommy Bahama knew or had reason to know that *their* email addresses belonged to a Washington resident. RCW 19.190.020. While Plaintiffs cite to consumers' online purchases, IP address tracking (via Klaviyo or otherwise), and information from email domain registrars as potential sources of residency information for email recipients, they do not claim that any of these purported sources of information resulted in Tommy Bahama knowing or having reason to know that *Plaintiffs' email addresses* belonged to Washington residents. For example, Plaintiffs do not claim *they* made any purchases from Tommy Bahama that would result in it knowing their email addresses were associated with Washington residents or that *they* clicked on links in emails from Tommy Bahama using Washington IP addresses. Plaintiffs accordingly fail to allege a CEMA violation.

### B. CEMA Is Invalid Under the Dormant Commerce Clause.

Plaintiffs and the State present a tangled dormant Commerce Clause analysis. Plaintiffs invent their own *per se* rule: that the dormant Commerce Clause applies only to state laws that discriminate in favor of their own residents and economic interests. Plaintiffs-Opp. at 9–10. But the Supreme Court in *National Pork* acknowledged that it "has left the 'courtroom door open' to [dormant Commerce Clause] challenges premised on 'even nondiscriminatory burdens.'" 598 U.S. at 379–80 (citation omitted). And the State's own authority notes discrimination is not required: "'*Absent* discrimination, we will uphold the law 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Int'l*

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 4
(No. 2:25-cv-01969-BJR)

*Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (quoting *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087–88 (9th Cir. 2013)).

Thus, the Supreme Court left intact the "three theories" under which states can violate the dormant Commerce Clause: "(1) discrimination, (2) extraterritorial regulation, and (3) excessive burden on interstate commerce." *Ashlynn Mktg. v. Pan*, 2025 WL 1953229, at \*6 (S.D. Cal. 2025). Unhelpfully, Plaintiffs' "arguments bleed together" and address these three independent concepts simultaneously. *Flynt v. Bonta*, 131 F.4th 918, 925–26 (9th Cir. 2025). Plaintiffs' CEMA claim fails because: (1) Plaintiffs seek to regulate entirely extraterritorial conduct; and (2) because CEMA imposes excessive burdens on interstate commerce.

### 1. CEMA Regulates Entirely Extraterritorial Conduct.

#### a. *National Pork* Did Not Overturn the Prohibition on State Regulation of Entirely Extraterritorial Conduct.

Plaintiffs' and the State's assertions that *National Pork* overruled the holding in *Healy*—or nullified the cases in the Western District of Washington like *Hartman* and *Booth*—is untrue. Plaintiffs-Opp. at 11. The fractured decision in *National Pork* merely dispelled a *per se* rule against state laws with extraterritorial ***effects***. But CEMA ***directly regulates*** conduct occurring ***wholly outside*** of Washington, which, under binding Ninth Circuit precedent, is unlawful.

In *National Pork*, the Supreme Court was asked "to fashion two new and more aggressive constitutional restrictions" in the form of *per se* rules against extraterritorial ***effects***, in the context of a statute that "regulates only products that companies choose to sell 'within' California." *See id.* at 364, 376 n.1 (citation omitted). As such, it did not address a law that directly regulated wholly out-of-state conduct. *See id.* Several courts have noted and applied this distinction, finding that *National Pork* left untouched case law related to state laws that directly regulate out-of-state transactions:

- The "Supreme Court did not curtail the *Baldwin-Healy* line of cases" and courts in this Circuit still "follow[] the precedent set in *Sam Francis* and *Sharpsmart*." *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025).

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 5
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- *National Pork* "did not disturb the constitutional bar on state laws that 'directly regulate out-of-state transactions by those with **no** connection to the State.'" *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (citation modified), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025).

- *National Pork* "did not change the rule that a state may not directly regulate transactions that take place wholly outside the state and have no connection to it." *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025).

The Supreme Court in *National Pork* declined to vitiate the longstanding principle that laws may not "directly regulate[] out-of-state transactions by those with no connection to the State." 598 U.S. at 376 n.1. Additionally, several Justices wrote separately in *National Pork*. The Ninth Circuit subsequently confirmed that because "the [*National Pork* Court] did not agree upon a 'single rationale'" for its "fractured decision," only the specific result in that case is binding. *Iowa Pork Producers Ass'n v. Bonta*, 2024 WL 3158532, at *2, *3 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025).[2]

Thus, the *Baldwin-Healy* line of cases—and the Ninth Circuit's decision in *Sam Francis*—still stands, and makes clear that a state may not regulate transactions occurring wholly outside its borders.

### b.     *Sam Francis* **Applies Here.**

Knowing this, the State wrongly characterizes Tommy Bahama as challenging the extraterritorial ***effect*** of CEMA.[3] State-Opp. at 6. But CEMA applies to emails sent to

---

[2] Plaintiffs rely heavily on *Flynt*, but that involved a California law limiting ***licensees of California cardrooms*** from owning more than 1% of an out-of-state business associated with casino-style gambling. 131 F.4th at 922. As such, the Ninth Circuit made clear that *Sam Francis* is "distinguishable" because "unlike the statute in *Sam Francis*, which we characterized as 'involving regulation of wholly out-of-state conduct,' the California statutes at issue here 'regulate *in-state conduct* with allegedly significant out-of-state practical effects.'" *Id.* at 930 (citation modified) (citation omitted); *see also id.* at 929 ("[T]he transaction that California law most directly regulates is the licensing of cardrooms in the state."). *Flynt* therefore merely reiterated *National Pork*'s uncontroversial holding that there is no *per se* rule against state laws with extraterritorial ***effects***.

[3] The Court in *Kempf* likewise did not address *Sam Francis* and conflated *National Pork's* holding that there is no per se ban on extraterritorial *effects* with the argument raised here regarding regulation of entirely extraterritorial conduct. *Kempf v. Fullbeauty Brands Operations, LLC*, 2026 WL 395677, at *6 (W.D. Wash. 2026); *see also Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, at *5 (E.D. Wash. 2026) (rejecting dormant Commerce

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 6
(No. 2:25-cv-01969-BJR)

Washington residents even when they are located elsewhere—thus regulating wholly out-of-state transactions. *Sam Francis*, 784 F.3d at 1323 (invalidating statute that "ha[d] no necessary connection with the state *other than the residency of the seller*" (emphasis added)). That situation is not "hypothetical," complaints about facial challenges notwithstanding. Plaintiffs-Opp. at 9; State-Opp. at 4-5. As Plaintiffs acknowledge, Plaintiffs *in this case* fail to allege they were in Washington when they received the at-issue emails and seek to represent a class of Washington residents who received the emails, without regard to whether the class members were in Washington at the time of receipt. And in a facial challenge under the dormant Commerce Clause, "[s]o long as the statutory language *applied* to analyze that scenario—on its face—offends the Constitution, the law must fall." *Nat'l Shooting Sports Found.*, 718 F. Supp. 3d at 1257.[4]

Plaintiffs also insist that Washington may apply CEMA to residents who are temporarily outside the state because Washington "has a legitimate interest in protecting its residents from conduct Washington deems harmful or undesirable." Plaintiffs-Opp. at 11; *see also* State-Opp. at 5. But Ninth Circuit precedent rejected this attempted residency hook through a state interest justification. *See Sam Francis*, 784 F.3d at 1323 (without discussion of the California statute's purpose or benefits, holding it "violates the dormant Commerce Clause" because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders'" despite being limited to transactions where "*the seller resides in California* or the sale takes place in California" (emphasis added) (citation omitted)()). Indeed, a California federal court rejected a nearly identical, post-*National Pork* attempt to evade the extraterritoriality restriction, reasoning that, "despite the State having sufficiently strong ties to the subjects of regulation

Clause argument without addressing *Sam Francis*). Defendants in both cases are seeking certification for interlocutory review by the Ninth Circuit.

[4] The State insists that "the text of CEMA makes clear" that it is valid in the "vast majority of its intended applications." State-Opp. at 4. But CEMA's residency hook (i.e., its text) renders it unconstitutional. CEMA also potentially (and fatally) sweeps in *former* or *occasional* Washington residents, as it applies to defendants that "know[], or ha[ve a] reason to know" of Washington residency, an element that can be met if "information [about residency] is available, upon request" from a third party that may maintain outdated records. RCW 19.190.020(1), (2).

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 7
(No. 2:25-cv-01969-BJR)

(namely, attempting to regulate state residents' conduct), the Ninth Circuit struck down the statute[]" in multiple prior cases. *See Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033–34.[5]

And CEMA is not insulated from the dormant Commerce Clause simply because it polices electronic transactions "in the interconnected modern economy." *See* State-Opp. at 5. Courts have regularly applied the extraterritoriality restriction to statutes regulating communications and other intangible conduct. *See* Mot. at 12 (collecting cases); *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033, 1036 (invalidating statute regulating out-of-state settlement agreements).

Plaintiffs cannot rely on their residency to survive a motion to dismiss. *Compare In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (Courts do not "accept as true … unwarranted deductions of fact"), *with* Plaintiffs-Opp. at 9 n.5. Because Plaintiffs fail to allege that they were in Washington when they received each email, CEMA is invalid as applied. CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001).[6] Like the statute challenged in *Sam Francis*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323 (citation omitted). Facially and as applied, CEMA is unconstitutional under the dormant Commerce Clause.

---

[5] Plaintiffs also note *State v. Heckel* found CEMA had "no 'sweeping extraterritorial effect.'" 143 Wn.2d 824, 838–39 (2001) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)); Plaintiffs-Opp. at 13. But the Supreme Court in *Edgar* did not require a "sweeping extraterritorial effect" and confirmed that no balancing of the local benefits is required where the conduct "takes place wholly outside of the State's borders." 457 U.S. 624, 642–43.

[6] By contesting the applicable standard for facial challenges, the State "presumably believes that [its quoted language from *Wash. State Grange*] dooms a facial challenge because this statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting*, 718 F. Supp. 3d at 1257. But "by that logic, a state law policing economic activity *everywhere in the world*—including within the state—would be immune to facial attack." *Id.*

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 8
(No. 2:25-cv-01969-BJR)

### 2.    CEMA Excessively Burdens Interstate Commerce.

A statute may still be unconstitutional absent discrimination and extraterritorial regulation if "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Int'l Franchise Ass'n, Inc.*, 803 F.3d at 399 (citation modified) (citation omitted); *see also Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1150 (9th Cir. 2012).

CEMA's burden on interstate commerce is clearly excessive compared to any putative local benefits. As Congress has recognized, "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the[] disparate [state] statutes they are required to comply." 15 U.S.C. § 7701(a)(11). Plaintiffs' appeal to *State v. Heckel*, 143 Wn.2d 824 (2001)—a decision from the dial-up internet era, before Congress enacted CAN-SPAM—fails to reckon with that significant modern interest. *See* Mot. 16–17; *cf. Virtumundo*, 575 F.3d at 1050 ("Especially in this arena, the engine of innovation moves far more quickly and nimbly than the methodical pace of legislation.").

In contrast to the burden, CEMA's putative local benefits are minimal. While the intent section cited by the State has since been repealed, it demonstrates the outdated motivations behind CEMA's passage. *See* State-Opp. at 5–6. The Legislature sought "immediate relief to *interactive computer service providers*" who "indicate[d] that their systems [could not] handle the volume of commercial electronic mail being sent and that filtering systems fail[ed] to screen out unsolicited commercial electronic mail messages." 1998 Wash. Sess. Laws Ch. 149 (emphasis added); *see also Heckel*, 143 Wn.2d at 833–34 (expressing similar concerns). Neither the State nor Plaintiffs discuss this concern, perhaps because it is antiquated after almost three decades of technological advancement. *See Brown v. Old Navy, LLC*, 4 Wn. 3d 580, 583 (2025) ("CEMA was enacted in 1998, during the Internet's dial-up era."). As for consumer protection, Washington's local interest in independently regulating misleading email subject lines is

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 9
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. *See* 15 U.S.C. § 7704(a)(2).[7]

### C.    CAN-SPAM Preempts Plaintiffs' Broad Application of CEMA.

Plaintiffs and the State fail to show that Plaintiffs' CEMA claim falls within the "limited, narrow exception"[8] to CAN-SPAM preemption, reserved only for "traditionally tortious or wrongful conduct" rooted in "falsity or deception." *Virtumundo*, 575 F.3d at 1062 (citations omitted).

### 1.    CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject Lines

Plaintiffs contend that CEMA is not facially preempted because "there is no CEMA provision which penalizes 'incomplete information.'" Plaintiffs-Opp. at 16. But Plaintiffs ignore the reality of CEMA's impact. Under CEMA, Washington courts cannot consider the body of the email. *See* Mot. at 18 (citing *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 592 (2025)). Plaintiffs tacitly admit this but argue it doesn't matter because "a subject line which is free of false or misleading information doesn't require 'additional context that eliminates any potential falsity or deception.'" Plaintiffs-Opp. at 16. That flips the analysis on its head. A subject line, by its nature, is limited. It cannot—and is not designed to—provide the level of detail required to eliminate any creative misinterpretation that Plaintiffs' attorneys might dream up. Any time the body of the email adds clarity or context to the subject line, the email could theoretically be construed as false or misleading. This cannot be the law and CEMA is thus preempted on its face.

---

[7] CAN-SPAM does not insulate CEMA from constitutional scrutiny under the dormant Commerce Clause. *Contra* Plaintiffs-Opp. at 7–8. "[F]or a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be ***unmistakably clear***." *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984) (emphasis added). CAN-SPAM preempts CEMA. *See supra* Section II.B. But even if it did not, being "consistent with federal policy—or even … further[ing] the goals we might believe that Congress had in mind—is an insufficient indicium of congressional intent." *Id.* at 92.

[8] The State's request for a "narrow interpretation" of the preemption clause, *see* State-Opp. at 6, directly contradicts *Virtumundo*'s holding that CAN-SPAM's preemption clause applies broadly with a "limited, narrow exception." *Virtumundo*, 575 F.3d at 1061.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 10
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 2.    "Misleading" Is Broader than "Falsity or Deception."

At bottom, both Plaintiffs and the State conflate "misleading" with "falsity or deception." But it is undisputed that: (1) CAN-SPAM's exception is limited to laws that "prohibit[] falsity or deception" (*id.*); CEMA prohibits only "false or misleading" subject lines (Plaintiffs-Opp. at 14); and "statements do not need to be literally false to mislead." *Id.* at 4; *see also* State-Opp. at 8. In other words, not all misleading subject lines are necessarily false or deceptive.

At most Plaintiffs insist that Washington has redefined "misleading" in the context of CEMA to equate to "deceptive." Plaintiffs-Opp. at 21. But Washington courts do not have the authority to evade federal preemption by recasting defined terms. Nor are deception and misleading "harmonious in the consumer protection context" as the State insists. *See* State-Opp. at 10–11. Federal courts have recognized that "deception" requires more than bare misleading information:

- "*When an advertisement is* not literally false, but is *misleading*, '*proof that the advertising actually conveyed the implied message and thereby deceived* a significant portion of the recipients becomes critical.'" *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash. 2011) (emphasis added) (citation omitted).

- "Though the language is similar to the CAN–SPAM Act, the California code has been defined as *prohibitive of 'deceptive' header information only, thereby creating a more onerous burden on a plaintiff than the 'materially misleading' standard* of the CAN–SPAM Act and thereby avoiding pre-emption by the CAN–SPAM Act." *Zoobuh, Inc. v. Better Broad., LLC.*, 2013 WL 2407669, at *5 (D. Utah 2013) (emphasis added).

- "[T]he Commission will find deception if there is a representation, omission or practice that is *likely to mislead* the *consumer acting reasonably in the circumstances, to the consumer's detriment*." *Sw. Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1435 (9th Cir. 1986) (emphasis added) (cited by State-Opp. at 10–11).

CAN-SPAM confirms this distinction. CAN-SPAM uses the word "mislead" in a separate section under a heading titled "[p]rohibition of deceptive subject headings." 15 U.S.C. § 7704(a)(2); Plaintiffs-Opp. at 20. But liability arises under this section only where the party has "*knowledge* fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, *about*

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 11
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*a material fact* regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2) (emphasis added). Stated differently, the subject line must not only be "likely to mislead," but the sender must have knowledge of the potential to mislead and the subject line must pertain to a material fact. CEMA contains no similar requirement, purporting to impose strict liability on the sender of an email if the recipient deems it misleading. *See Virtumundo*, 575 F.3d at 1063.

Plaintiffs also incorrectly disregard the Ninth Circuit's interpretation of the word "misrepresent" in CEMA's Subsection 1(a) as "inapposite" because it did not use the word "misleading." Plaintiffs-Opp. at 20. There, looking to Washington law, the Ninth Circuit analyzed "misrepresent" as used in Subsection 1(a) to mean "representing incorrectly: to give a false, imperfect or *misleading* representation." *Virtumundo*, 575 F.3d at 1059 (emphasis added) (citation omitted). Furthermore, the Ninth Circuit concluded that Washington's "broad definitions extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices," and for that reason, the plaintiff's claim under Subsection 1(a), based on header information that "misrepresents," was preempted. *Id.* Like the word "misrepresent," the word "mislead" reaches email subject lines that are neither false nor deceptive.[9] Thus, under the logic of *Virtumundo*, claims under Subsection 1(b) based on subject lines that are merely "misleading" are preempted.

The Court must examine the specific claim Plaintiffs have pled, not merely the elements of the statute. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding a state law claim is preempted "as applied" if the specific claim pled is preempted, even if the statute might be valid in other circumstances); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. 2008), *aff'd sub nom., Ferguson v. Active Response Grp.*, 348 F. App'x 255

---

[9] For these reasons, the recent orders in this and the Western District respectfully erred in holding *Virtumundo*'s reasoning was limited to Subsection 1(a). *See Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, at *3–4 (E.D. Wash. 2026); *Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 (W.D. Wash. 2025); *Ma v. Nike, Inc.*, 2026 WL 100731, at *2 (W.D. Wash. 2026); *Kempf*, 2026 WL 395677, at *4; *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140, at *1 (W.D. Wash. 2026); *Jerde v. Bylt LLC*, 2026 WL 415445 (W.D. Wash. 2026).

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 12
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(9th Cir. 2009) (rejecting reliance on CEMA's text in the abstract and dismissing the claim after examining the pleaded facts, which alleged at most "bare error" rather than "falsity or deception"). And here, unlike the emails addressed in *Harrington*, *Ma*, *Shahpur*, *Agnew*, and *Kempf*, Plaintiffs' alleged email subject lines cannot be characterized as deceptive or literally false. At most, the emails Tommy Bahama sent could be construed as misleading or "giv[ing] a wrong impression." *Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last accessed Feb. 19, 2026).

Even if CEMA's requirement for "misleading" language referred to "deceptive" language, Plaintiffs failed to allege that their allegations meet that standard under Washington law. *See supra* Section II.A.2. Washington courts recognize that "implicit in [deceptive] is 'the understanding that the actor *misrepresented* something of ***material importance*.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166 (2007) (emphasis added) (citation omitted) (cited by Plaintiffs at 24), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009). Accordingly, they are preempted.

### 3. Plaintiffs Admit They Must Allege Tommy Bahama's Statements Were Material to Avoid Preemption.

To avoid this reality, Plaintiffs argue they need show only "some degree of materiality" to escape preemption under *Virtumundo*. Plaintiffs-Opp. at 24.[10] In doing so, they reject Tommy Bahama's cited authority because it did not concern CEMA claims. Plaintiffs-Opp. at 16 n.9. But CEMA's failure to require materiality is precisely the reason Plaintiffs' CEMA claim is preempted.

---

[10] The State fails entirely to cite to or reference *Virtumundo*'s binding construction of CAN-SPAM's preemption exemption, instead apparently claiming that all state consumer protection statutes are exempt. State-Opp. at 7–8. It points to legislative history stating that "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern" of complying with multiple state laws, "because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id.* But Congress's reference to "[s]tatutes that prohibit ***fraud*** and deception"—as opposed to bare misleading statements—underscores the need to require something more than bare misleading statements. *Id.*

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 13
(No. 2:25-cv-01969-BJR)

Regardless, Plaintiffs' own citations demonstrate the emails must be material ***to the recipient***. *Silverstein v. Keynetics Inc.*, 2016 WL 7475616, at \*4 (N.D. Cal. 2016) (holding false "from" names in email headers were immaterial because the plaintiff did "not allege that the individuals listed in the 'from' name fields were actually known to him"), *aff'd*, 727 F. App'x 244, 246 (9th Cir. 2018) (claim preempted by CAN-SPAM because "Silverstein [did not] allege that the 'From' names ***deceived him*** as to the nature of the e-mails" (emphasis added)). Plaintiffs and the State reiterate this point further by citing to cases involving a California anti-spam statute, Cal. Bus. & Prof. Code 17529.5, which requires materiality ***and*** knowledge by the defendant.[11]

Plaintiffs ultimately ask the Court to employ the materiality standard from *Kousisis v. United States*, 605 U.S. 114, 131 (2025), i.e., that a fact is material if a reasonable person would attach importance to it in how they proceed. According to Plaintiffs, the mere fact that Tommy Bahama sends emails is proof that consumers "attach importance" to them. Opp. at 19. But Plaintiffs fail to address *Kousisis*'s teaching that materiality "[r]esembl[es] a but-for standard, … ask[ing] whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." *Kousisis*, 605 U.S. at 131 (citation omitted). Thus, simply receiving an email— which Plaintiffs have never read—does not make it material to them ***or anyone***, even under *Kousisis*.[12] And the advertisements are not material to them simply because Plaintiffs are "consumers." Under Plaintiffs' circular logic, ***any*** marketing email would be excepted from

---

[11] *See, e.g.*, *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 941 (N.D. Cal. 2009) (analyzing a statute barring subject lines "that a person ***knows*** would be likely to mislead a recipient, acting reasonably under the circumstances, about a ***material fact*** regarding the contents or subject matter of the message" (emphasis added)); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at \*11–13 (N.D. Cal. 2010) (highlighting that "material, intentional misrepresentation[s]," "intentional deception," and "knowing" misrepresentations were needed to avoid preemption). One case Plaintiffs neglected to cite emphasizes this distinction. *Asis Internet Servs. v. Member Source Media, LLC,* 2010 WL 1610066, at \*5 (N.D. Cal. 2010) (stressing the importance of defendant's "intentional deception" to its holding that plaintiff's claim arose from a traditional tort theory and thus was not preempted).

[12] In any event, *Kousisis* discussed materiality in the context of wire fraud and explicitly chose not to define the term. 605 U.S. at 132.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 14
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

CAN-SPAM preemption. This is why Washington courts require more than materiality in the abstract: the statement must be material *to the plaintiff*. *See* Mot. at 23 (collecting cases).

Regardless, the emails are likewise immaterial under Plaintiffs' reasonable-person standard because "[a] material fact is one that not only influences and affects the transaction, but also goes to its *very essence and substance*." 16A Wash. Prac., Tort Law and Practice § 19:3 (5th ed. 2025) (emphasis added). Plaintiffs argue at most that the emails identified in the SAC may mislead a consumer as to the timing of sales. Unlike quality, price, or quantity, a consumer's decision to make a purchase at the beginning or end of a sale has no impact on the fundamentals of the bargain. Either way, they receive the same deal for the same price. Further, as discussed above, Plaintiffs did not allege that the emails were false or misleading at all, let alone in such a way as to influence the "likely or actual behavior of the recipient." *See* Plaintiffs-Opp. at 17 (quoting *Kousisis*, 145 S. Ct. at 1396).

Because Plaintiffs cannot allege that the subject lines were material to anyone, let alone them, their CEMA claim is preempted.[13]

### 4.   Plaintiffs Cannot Allege Knowledge or Injury.

Plaintiffs do not dispute that they failed to allege knowledge or actual harm, instead contending that they need not even allege it because CEMA and the CPA do not require it. Plaintiffs-Opp. at 22. But this is precisely why CEMA falls well short of the standards articulated in CAN-SPAM or at common law. *See* 15 U.S.C. § 7704(a)(2) (requiring "actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the

---

[13] Plaintiffs cite to an insider-trading case to argue materiality is a mixed question of fact and law not to be decided on a motion to dismiss. Plaintiffs-Opp. at 19 (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)). But courts reviewing CAN-SPAM say no such thing. *Silverstein*, 2016 WL 7475616, at *4 (granting a motion to dismiss where emails did "not amount to material falsity or deception that is sufficient to avoid preemption"). Contrary to Plaintiffs' assertions, "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint." *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citation modified) (quoting *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009)).

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 15
(No. 2:25-cv-01969-BJR)

message would be likely to mislead a recipient"); *Adams v. King County*, 164 Wn.2d 640, 662 (2008) (requiring "the speaker's knowledge of … falsity").

In admitting that materiality is necessary to avoid preemption, Plaintiffs also implicitly recognize—as *Virtumundo* makes clear—that a claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception" to evade preemption. 575 F.3d at 1061–63. Plaintiffs insist that "disjunctive references to 'falsity *or* deception" in fact, 'suggest[s] [a] broader application,' not one 'limited *just* to common-law fraud and other similar torts.'" Plaintiffs-Opp. at 22 (quoting *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942). But that interpretation flies in the face of the Ninth Circuit's binding statutory construction, "[r]eading 'falsity' *in conjunction with* 'deception,' which connotes a type of tort action based on misrepresentations" as "refer[ring] to 'traditionally tortious or wrongful conduct.'" *Virtumundo*, 575 F.3d at 1062 (emphasis added).

And Plaintiffs' cases stray further from any persuasive pull because they interpret California's anti-spam statute—not CEMA. Those same cases acknowledge that the California statute is "quite distinct from the Washington statute in *Virtumundo*. This [California] provision does not prohibit any conduct that is not prohibited by the CAN–SPAM Act." *Asis Internet Servs. v. Subscriberbase*, 2010 WL 1267763, at *11. Indeed, unlike CEMA, California's statute requires knowledge, materiality, and deception. *See id.* at *9.

Plaintiffs do not dispute their failure to allege knowledge or injury. Their claim should be dismissed accordingly.

**D.    Plaintiffs Admit Their CPA Claim Fails.**

Plaintiffs' Opposition acknowledges their CPA claim rises or falls with their CEMA claim. *See* Plaintiffs-Opp. at 25. Because Plaintiffs fail to allege a single CEMA violation, the Court should dismiss their CPA claim. *See* Mot. at 24.

**E.    Plaintiffs' Claim for Actual and Treble Damages Fails.**

Plaintiffs do not dispute that they allege *no* facts suggesting they sustained actual damages, such as allegations that they opened or read the emails or purchased products in

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 16
(No. 2:25-cv-01969-BJR)

reliance on the email subject lines. Instead, Plaintiffs cite *Brown* to argue that mere receipt of the email suffices to sustain a claim for actual damages. Plaintiffs-Opp. at 25. But *Brown* says no such thing. In *Brown*, the Washington Supreme Court recognized that receipt of the email is sufficient grounds to satisfy the CPA's injury prong, entitling a plaintiff to *statutory* damages. 4 Wn.3d at 592. But it in no way held that mere receipt of an email, without more, creates a claim for actual damages. *See id.* Because the SAC "lacks any factual allegations that would support a finding of actual damages," Plaintiffs' claim for actual damages must be dismissed. *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011).

Plaintiffs likewise do not dispute that Washington law permits treble damages only upon awards of actual damages. Thus, Plaintiffs' "failure to show actual monetary damages precludes the recovery of treble damages under the CPA." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists,* 64 Wn. App. 553, 565 (1992) (distinguishing between "injur[ies] cognizable under the [Consumer Protection] Act" from "treble damages [which] are based upon 'actual' damages" (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990)). Plaintiffs imply otherwise, but courts routinely consider "whether [to] dismiss … treble damages request[s] under Rule 12(b)(6)." *Jones v. County of San Bernardino*, 2022 WL 3138880, at *7 (C.D. Cal. 2022) (dismissing claim for treble damages barred by statute); *Jang v. Life Ins. Co.*, 2017 WL 11632250, at *3 (C.D. Cal. 2017) (dismissing request for treble damages because there was "no statutory basis").

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice and without leave to amend, as they cannot cure the fundamental defects in their claims and Plaintiffs have already amended their complaint two times after receipt of two prior motions to dismiss.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 17
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 30th day of March, 2026.

DAVIS WRIGHT TREMAINE LLP


By: */s/ Lauren B. Rainwater*
    Lauren B. Rainwater, WSBA #43625
    Rachel Herd, WSBA #50339
    Emily Parsons, WSBA #57061
    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610
    Telephone: 206-622-3150
    E-mail: laurenrainwater@dwt.com
    E-mail: rachelherd@dwt.com
    E-mail: emilyparsons@dwt.com

    *Attorneys for Defendant Tommy Bahama*
    *Group, Inc.*

    *I certify that this memorandum contains 6,276*
    *words, in compliance with the Local Civil Rules*
    *and the Court's order (Dkt. 44).*

DEFENDANT'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT - 18
(No. 2:25-cv-01969-BJR)