The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE HALEY and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

TOMMY BAHAMA GROUP, INC.,

Defendant.

No. 2:25-cv-01969-BJR

DEFENDANT TOMMY BAHAMA GROUP, INC.'S SUPPLEMENTAL BRIEF PER COURT'S MAY 4, 2026 ORDER

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 1
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ......................................................................................................................1

    A. Plaintiffs Allege an Injury in Fact to Support Article III Standing...........................1

        1. Plaintiffs Allege an Injury in Fact...............................................................2

        2. Plaintiffs' Alleged Injury Is Traceable to Tommy Bahama........................4

        3. Plaintiffs' Alleged Injury Is Redressable By Judicial Order. ......................5

    B. Plaintiffs' Injury Is Concrete, Even Though It Is Not an Economic Injury as Required to State a CPA Claim. ...............................................................................5

III. CONCLUSION..................................................................................................................8

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- i
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Defendant Tommy Bahama Group, Inc. ("Tommy Bahama") respectfully submits this brief in response to the Court's May 4, 2026 Order to show cause why the case should not be remanded to King County Superior Court for lack of subject matter jurisdiction. Dkt. 49. The Court found that "the current record raises a substantial question as to whether Plaintiff[s] ha[ve] adequately alleged Article III standing." *Id.* at 3.

Plaintiffs allege they received commercial emails that were false or misleading in violation of the Commercial Electronic Mail Act ("CEMA"), and they assert a derivative claim under the Consumer Protection Act ("CPA"). The receipt of these allegedly unlawful emails constitutes a concrete injury in fact that is fairly traceable to Tommy Bahama's marketing emails and would be redressed by the relief Plaintiffs seek. These allegations are sufficient to establish Article III standing. Whether Plaintiffs have adequately alleged an economic injury required to prevail on a CPA claim presents a separate merits issue and does not defeat standing.

Because Plaintiffs have adequately alleged Article III standing, remand is unwarranted. If the Court concludes otherwise, Tommy Bahama respectfully requests the Court stay the case pending the resolution of the appeal of *Montes v. Catalyst Brands LLC*.

## II.    ARGUMENT

Plaintiffs have alleged an injury in fact to support Article III standing. What they have not done is allege an injury to business or property to support a CPA claim, which the Washington Supreme Court recently confirmed is required to establish the CPA's "injury to business or property" element. *Montes v. SPARC Grp., LLC*, 586 P.3d 999, 1001, 1007 (Wash. 2026). The distinction is critical.

### A.    Plaintiffs Allege an Injury in Fact to Support Article III Standing.

Article III standing exists because Plaintiffs allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 1
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.    Plaintiffs Allege an Injury in Fact.

First, Plaintiffs must show that they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As the Court recognized, "[a] statutory violation alone does not automatically satisfy this requirement." Dkt. 49 at 2. However, "intangible harms can … be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC,* 594 U.S. at 425 (citing *Spokeo*, 578 U.S. at 340–41). CEMA protects Washingtonians from receiving emails with false or misleading subject lines. Courts in this District have repeatedly held that the receipt of such emails constitutes an injury in fact sufficient for Article III standing. *See Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019) (Robart, J.); *Brinton v. Vivint Inc.*, 2024 WL 3688589, *3 (W.D. Wash. 2024) (Cartwright, J.); *Hoffman v. One Techs., LLC*, 2017 WL 176222, *2 (W.D. Wash. 2017) (Lasnik, J.).

Judge Robart's analysis in *Harbers* directly applies here and "remains persuasive after *TransUnion*." *Brinton*, 2024 WL 3688589, at *3. *Harbers* involved a putative class action seeking only statutory damages for emails with allegedly misleading subject lines sent in violation of CEMA under the CPA. *See* 415 F. Supp. 3d at 1001–03. In denying a motion to remand, Judge Robart concluded that because the "harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions[,]" and "under CEMA, individuals have a right to be free from certain forms of deceptive commercial e-mail advertisements," "CEMA was enacted to protect concrete interests" sufficient for Article III standing. *Id.* at 1008.

Judge Robart then evaluated whether the plaintiff's allegation that she received marketing emails "with false or misleading subject lines satisfies the concreteness requirement, ***even absent additional allegations of harm***." *Id.* at 1009 (emphasis added). He concluded it did given "CEMA identifies a right to be free from deceptive commercial e-mails, which suffers anytime a

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 2
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

prohibited message is transmitted." *Id*. A plaintiff thus "need not allege any additional harm beyond the CEMA violations to allege a concrete injury-in-fact." *Id.* at 1011.

The Ninth Circuit's decision in *Popa v. Microsoft Corporation* does not alter these core constitutional principles. 153 F.4th 784, 790 (9th Cir. 2025). The Ninth Circuit expressly applied a narrow approach, noting "all we need to acknowledge to decide this case[] is that *TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." 153 F.4th at 790–91. The *Popa* court analyzed whether the plaintiff, who alleged a violation of a state privacy statute based on her browsing of an online store being recorded by "session-replay" technology, had alleged a privacy harm that would have been actionable under the common law.[1] *Id.* at 787–88, 791–92. The *Popa* court concluded that because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected by" the technology, she did not allege "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law" and lacked Article III standing. *Id.* at 791.

But here, as *Harbers* recognized, "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." 415 F. Supp. 3d at 1008. Plaintiffs alleged an injury in fact by alleging that "Tommy Bahama has spammed Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from ***such annoyance and harassment*** under CEMA." Dkt. 36 ("SAC") ¶ 78 (emphasis added). A court in this District recently determined that CEMA plaintiffs had sufficiently pled a concrete injury where they made a nearly identical claim. *See Liss v. Skechers U.S.A., Inc.*, No. 3:25-cv-05861-DGE, slip op. at 6–7 (W.D. Wash. May 19, 2026) ("Plaintiffs argue Defendant's emails contained false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA."). In other words, because Plaintiffs allege receipt of false or misleading commercial emails, Plaintiffs allege they

---

[1] "[S]ession-replay technology allows a business to capture and reproduce customers' interactions with its website." *Popa*, 153 F.4th at 786.

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 3
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

suffered the "kind of harm" that was "actionable at common law." *Popa*, 153 F.4th at 791 (noting there need not be an "exact duplicate"). What matters under *Popa* is whether they have "identified a *harm* that [they] experienced that is … similar to those protected by these torts." *Id*. at 792 (emphasis added). Plaintiffs have done so. *See Harbers*, 415 F. Supp. 3d at 1008.

Courts elsewhere in the Ninth Circuit have found Article III standing to exist under similar statutes. *Cf. Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (owner of a phone "suffers a concrete, *de facto* injury when their right [under the TCPA] to be free from such communications is violated"); *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) ("The substantive right [under California CEMA] … is protection from unwanted spam emails." (citation modified)); *Whittaker v. Tactical USA LLC*, 2024 WL 1855645, *6 (E.D. Cal. 2024) ("[California CEMA] codifies the substantive right of being protected 'from unwanted spam emails'") (citation omitted).

The Eastern District of Washington's opinion in *Montes v. Catalyst Brands LLC*, 2025 WL 3485827 (E.D. Wash. 2025), failed to address this precedent. Should the Court disagree, Tommy Bahama requests that—rather than remand—the Court stay this case pending the Ninth Circuit's resolution of the appeal of that decision or order supplemental briefing to address whether a stay is appropriate. *See Notice of Appeal*, *Montes v. Catalyst Brands LLC*, No. 2:25-cv-00281 (E.D. Wash. Dec. 19, 2025) (Dkt. No. 17); *see also Mediterranean Enters., Inc. v. Ssangyon Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (a district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") (citation omitted).

### 2.    Plaintiffs' Alleged Injury Is Traceable to Tommy Bahama

Plaintiffs' alleged injury must also be "fairly traceable" to Tommy Bahama's actions. "An injury is 'fairly traceable' where there is a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behav. Health*, 79 F.4th 1068, 1083 (9th Cir. 2023) (citation omitted). Plaintiffs allege Tommy Bahama injured them by sending them emails

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 4
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

with misleading subject lines in violation of CEMA. Plaintiffs have satisfied Article III standing's traceability requirement. *See id.* (plaintiffs' injuries held "fairly traceable" because they were "all connected to [the defendant's] alleged conduct of improperly developing Guidelines in its own self-interest").

### 3.    Plaintiffs' Alleged Injury Is Redressable By Judicial Order.

Finally, the alleged injury must be "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. CEMA authorizes and Plaintiffs seek statutory damages under the CPA, RCW 19.190.040(1), 19.190.090(1); SAC ¶ 112; and injunctive relief requiring Tommy Bahama to comply with CEMA, RCW 19.190.090(1); SAC ¶¶ 102, 112. An order awarding either remedy would redress Plaintiffs' alleged injury, satisfying the redressability prong. *See Wolfson v. Brammer*, 616 F.3d 1045, 1056–57 (9th Cir. 2010) (redressability satisfied when injunction barring defendants from actions toward plaintiff would provide plaintiff relief).

### B.    Plaintiffs' Injury Is Concrete, Even Though It Is Not an Economic Injury as Required to State a CPA Claim.

Although Plaintiffs' alleged CEMA violation satisfies Article III standing, Plaintiffs fail to allege injury to business or property as required to sustain a CPA claim. These two assertions are not mutually exclusive. Whether Plaintiffs also relied on any of Tommy Bahama's allegedly false or misleading emails or otherwise incurred any economic injury is irrelevant to the ***Article III*** injury inquiry. *See Chin*, 764 F. Supp. 3d at 934 ("An economic injury would be sufficient to show an injury in fact, *but it is not necessary*.") (citation omitted). What matters for standing purposes is that they were allegedly subjected to the injury of receiving false or misleading emails. *Harbers*, 415 F. Supp. 3d at 1008–10; *Brinton*, 2024 WL 3688589, at *2 ("receiving 'spam' emails is encompassed" in Article III intangible injury).

CEMA does not create a private right of action; instead, recipients of communications that allegedly violate CEMA may pursue relief under the CPA. *Wright v. Lyft, Inc*., 189 Wn.2d 718, 723, 728 (2017). To prevail on a CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 5
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

interest; (4) injury to the plaintiffs' business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780 (1986).

Certain statutes—including CEMA—create per se CPA violations. *See* RCW 19.190.030. A per se violation, however, establishes only the first three *Hangman Ridge* elements. A plaintiff must still prove injury to business or property and causation. *Anderson v. Valley Quality Homes, Inc*., 84 Wn. App. 511, 516 (1997); *see also Race v. Fleetwood Retail Corp. of Wash*., noted at 116 Wn. App. 1041, 2003 WL 1901274, *1 (Wash. Ct. App. 2003) (affirming dismissal when injury was not shown); *Mielke v. Tacoma RV Ctr., Inc*., 30 Wn. App. 2d 1038, at *5 (2024) (dismissing per se CPA claims for lack of causation). Both the injury and causation elements must arise from the alleged false or misleading practice itself—not merely from the existence of a statutory violation. *Hangman Ridge*, 105 Wn.2d at 785. Thus, even assuming a CEMA violation, Plaintiffs must plausibly allege that the subject lines caused injury to their business or property and causation. They do not do so here.

*Montes v. SPARC Group, LLC.* The Washington Supreme Court recently clarified the CPA's injury requirement in *Montes v. SPARC Grp. LLC*, 586 P.3d 999 (Wash. 2026), holding that a consumer does not suffer injury to business or property when she "purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history." *Id*. at 1002. In *Montes*, the plaintiff purchased leggings for $6 after the retailer advertised that they were discounted from $12.50. Even though the price comparison was allegedly false, the court held that the plaintiff suffered no CPA injury because she paid the advertised price and received the product she intended to buy. *Id*. at 1008. The CPA requires an objective economic loss; "disappointed expectations" resulting from a misleading representation are insufficient. *Id*. at 1002, 1008.

Here, Plaintiffs' allegations fall squarely within the scope of *Montes*. They allege that Tommy Bahama sent them promotional emails with subject lines "that do not reflect the true availability of the deal itself." *E.g.*, SAC ¶ 41. Plaintiffs do not allege that they opened the emails, clicked on them, purchased any product, or spent any money. Even if they had purchased

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 6
(No. 2:25-cv-01969-BJR)

a product advertised in the emails, *Montes* forecloses a CPA injury based solely on the alleged misrepresentation about the duration or urgency of a promotion. A consumer who buys a product at the advertised price has received exactly what he bargained for and has not suffered an economic loss. Because the alleged deception concerns only the purported duration of promotional pricing—and Plaintiffs allege no economic loss—their claim fails under *Montes*.

*Wright v. Lyft.* Plaintiffs attempt to avoid this conclusion by invoking *Wright v. Lyft*, 189 Wn.2d 718 (2017), asserting that a CEMA violation automatically establishes all five elements of a CPA claim. That is incorrect. *Wright* involved CEMA's prohibition on sending commercial texts without consent—not CEMA's prohibition on sending emails with misleading subject lines. The Washington Supreme Court held that receiving a commercial text message sent without consent under CEMA establishes injury and causation because such messages impose concrete economic harms: they consume limited device memory, use paid data services, and interrupt the receipt of desired communications. *Id.* at 731. The Court's reasoning rested on legislative findings specific to text messages, including that recipients "pay for use when a message is received" and that the limited memory of mobile devices can be exhausted. *Id*. at 730–31 (citing RCW 19.190.060). These harms arise directly from the receipt of the text message itself, regardless of the message's content—unlike CEMA email provisions.

The statutory scheme confirms the distinction. The text-message provisions of CEMA are consent-based: sending commercial text messages without consent violates the statute regardless of what the message says. RCW 19.190.060; RCW 19.190.070. The email subject-line provision is different. It is content-based, not consent-based. CEMA does not prohibit sending commercial emails generally; it prohibits sending emails with false or misleading subject lines. RCW 19.190.020(1)(b). Emails with a truthful subject line do not violate the statute. Accordingly, any CPA injury tied to email must stem from the deception in the subject line, not from the mere receipt of the email. Inbox storage, bandwidth consumption, and interruption cannot supply that injury to business or property because they occur whether the subject line is truthful or deceptive. A truthful subject line occupies the same inbox space and consumes the same bandwidth as a

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 7
(No. 2:25-cv-01969-BJR)

deceptive one. The falsity adds nothing. Any time spent reviewing or deleting the email flows from receipt of the email itself—not from whether the subject line is truthful or misleading.

**Harmonizing *Wright* and *Montes*.** Read together, *Wright* and *Montes* reinforce the CPA's independent injury requirement. In *Wright*, the statutory violation itself caused concrete economic harm because unsolicited text messages impose costs on recipients upon receipt. 189 Wn.2d at 731. In contrast, misleading email subject lines do not impose any incremental economic harm. Under *Montes*, deception alone—particularly deception about the magnitude or duration of a sale—does not constitute injury to business or property absent an objective economic loss. 586 P.3d at 1001, 1008. Plaintiffs' contrary reading of *Wright* would create an untenable result. A consumer who received an email stating "T-Shirts 50% Off" when the shirts had not previously sold for the referenced price could recover under the CPA via CEMA, even though the identical misrepresentation asserted directly under the CPA would fail under *Montes* for lack of injury. Nothing in *Wright* suggests the Court intended such a result.

The better reading is straightforward: *Wright* applies to unsolicited text-message violations where the statutory violation itself produces the injury identified by the legislature. That interpretation harmonizes *Wright* with *Montes* and preserves the CPA's statutory requirement of injury to business or property. Because Plaintiffs allege no injury to business or property caused by the alleged subject-line misrepresentations—and none could arise from the conduct alleged—Plaintiffs fail to state a claim.

### III. CONCLUSION

Plaintiffs have alleged a sufficient injury for Article III standing (although insufficient for CPA injury). Remand would be improper. If the Court disagrees, Tommy Bahama requests a stay pending resolution of the appeal of *Montes v. Catalyst Brands LLC*.

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 8
(No. 2:25-cv-01969-BJR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 29th day of May, 2026.

DAVIS WRIGHT TREMAINE LLP

/s/ *Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625
Rachel Herd, WSBA #50339
Emily Parsons, WSBA #57061
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Email: laurenrainwater@dwt.com
Email: rachelherd@dwt.com
Email: emilyparsons@dwt.com

*Attorneys for Defendant Tommy Bahama Group, Inc.*

*I certify that this document contains 2,833 words, in compliance with the Local Civil Rules.*

TOMMY BAHAMA'S SUPPLEMENTAL BRIEF
PER COURT'S MAY 4, 2026 ORDER- 9
(No. 2:25-cv-01969-BJR)