The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALERIE HALEY and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

TOMMY BAHAMA GROUP, INC.,

Defendant.

NO. 2:25-cv-01969-BJR

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 1

III.   ARGUMENT ................................................................................................... 2

     A.   The Court Should Decline to Address Tommy Bahama's Unjustifiably Belated New Constitutional Challenges ................................................. 2

     B.   CEMA's Statutory Damages Provision Abides the Washington State Constitution ......................................................................................... 3

     C.   The *Brown* Decision Confirmed CEMA's Plain Language and Presents No Fair Notice Issue ................................................................................ 6

          1.   The standard for providing fair notice is especially low for civil statutes like CEMA and the CPA that only regulate commercial activities................... 7

          2.   The Washington State Supreme Court's decision in *Brown* did not render CEMA unconstitutionally vague ......................................................... 8

IV.   CONCLUSION ................................................................................................ 11

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - i
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.    INTRODUCTION

In establishing Washington's Commercial Electronic Mail Act (CEMA) the Washington State Legislature did not tacitly amend the whole of the Consumer Protection Act (CPA), as Defendant Tommy Bahama Group Inc. sweepingly and incorrectly argues. Rather, the Legislature created a discrete statutory scheme to address a specific issue—deceptive commercial email—and explicitly stated the bases for finding a violation and accompanying statutory damages for that specific problem. The Legislature acted within its authority to do so, and CEMA does not violate Article II, Section 37 of the Washington Constitution.

Tommy Bahama's due process argument fairs no better. In response to a certified question from this Court, the Washington Supreme Court in *Brown v. Old Navy, LLC*, 567 P.3d 38 (2025) did not issue a "new interpretation" of CEMA, it just confirmed what the statute's plain language says—that CEMA prohibits commercial emails that contain <u>any</u> "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Nothing in CEMA's text suggests the statute prohibits only those emails with subject lines containing false or misleading information <u>about the email message's commercial nature</u>. Tommy Bahama's strained reading of a consumer resource webpage from the Washington State Attorney General's Office (AGO) and a single case that expressly declined to put any weight on that webpage are not a basis for invalidating a state statute on fair notice grounds. These arguments—which could and should have been included in Tommy Bahama's first motion to dismiss—defy commonsense. Should the Court decide to entertain them on their merits, however, they should be rejected.

## II.    BACKGROUND

The State previously intervened for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). Dkt. 42. Because the State remains a party to this litigation, and because Tommy Bahama raises two new constitutional challenges to the statute, the State responds to those challenges here. As before, the State takes no position with respect to

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS - 1
(2:25-cv-01969-BJR)

other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law.

### III.    ARGUMENT

**A.    The Court Should Decline to Address Tommy Bahama's Unjustifiably Belated New Constitutional Challenges**

At the outset, this Court should decline to address the merits of Tommy Bahama's second set of constitutional challenges to CEMA. A second Rule 12(b)(6) motion is precluded where the grounds raised in the second motion could have been asserted in the first. Fed. R. Civ. P. 12(g)(2); *Conner v. Micciche*, No. 3:25-CV-00054-SLG, 2026 WL 375954, at *2-3 (D. Alaska Feb. 10, 2026) (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019)). This is one of those instances.

Tommy Bahama filed its first Motion to Dismiss the Second Amended Complaint on February 20, 2026. Dkt. 39. This second motion comes after eight federal court orders denied the same constitutional challenges contained in Tommy Bahama's pending first motion.[1] While Tommy Bahama might want to pile on additional arguments before the Court rules on that earlier motion, it has zero justification for doing so. The new constitutional challenges regarding Article II, Section 37 and fair notice each rely on material available to Tommy Bahama at the

---

[1] *Jackson v. Hanesbrands, Inc.*, No. 2:25-cv-00440-SAB, 2026 WL 1161444 (E.D. Wash. Apr. 28, 2026); *Repperger v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-cv-00526-RLP, 2026 WL 1157157 (E.D. Wash. Apr. 28, 2026); *Agnew v. Macys Retail Holdings LLC*, No. 2:25 CV 02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt*, No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Kempf v. Fullbeauty Brands*, No. C25 1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25 1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike*, Inc., No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026). After Tommy Bahama filed this second motion, a ninth decision was entered, also rejecting Tommy Bahama's original constitutional arguments. *See Stevens-Hills et al v. Glamnetic LLC*, No. 3:26-cv-05003-DGE, 2026 WL 1741316 (W.D. Wash. June 17, 2026).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 2
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

time of its first motion: (1) the plain language of CEMA and the CPA, which Tommy Bahama now (wrongly) asserts are in tension after the Washington Supreme Court's decision in *Montes v. SPARC Group, LLC*, 586 P.3d 999 (Wash. 2026)[2]; (2) the 2025 *Brown* decision and other then-available case law; and (3) consumer resource pages from the AGO website, all of which existed prior to Tommy Bahama's earlier Motion to Dismiss. Dkt. 52 at 11-15.

Tommy Bahama attempts to justify this unsanctioned page limit increase and second bite at the apple based entirely on *Montes*, which it claims, "presented new arguments and defenses." Dkt. 52 at 4, 12. *Montes*, however, nowhere addresses CEMA, Article II, Section 37, or fair notice. Rather, *Montes* addressed an ordinary CPA claim and whether the particular injury alleged there satisfied the CPA's statutory requirements. 586 P.3d at 1007. Doubt about the potential efficacy of one's prior motion and corresponding desire to lodge additional (but previously available) constitutional challenges is not among the justifications for filing a successive motion in the authority Tommy Bahama cites. Dkt. 52 at 1, 4-5. Tommy Bahama should not be rewarded for its delay, waste of the parties' and this Court's resources, and the attempt to bootstrap a new state constitutional challenge to the recent, and unrelated *Montes* decision. The Court should exercise its discretion and decline to address these new challenges. Should the Court decide otherwise, the State submits the arguments below.

**B.    CEMA's Statutory Damages Provision Abides the Washington State Constitution**

Over twenty-years ago, the Washington State Legislature concluded that stemming the proliferation of deceptive commercial emails was a matter "vitally affecting the public interest." Wash. Rev. Code § 19.190.030. The Legislature constructed CEMA to prohibit commercial email with "false or misleading information in the subject line." *Id*. Companies that otherwise choose to send such email thereby commit an "unfair or deceptive act in trade or commerce and an unfair

---

[2] Indeed, in its earlier Motion to Dismiss, Tommy Bahama argued that Plaintiffs must allege they personally sustained an injury. This second motion focuses on that same issue as the basis for asserting CEMA violates Article II, Section 37. *Compare* Dkt. 39 at 23-24 *with* Dkt. 52 at 11.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 3
(2:25-cv-01969-BJR)

method of competition for the purpose of applying the consumer protection act." *Id*. The Legislature thus stated that a violation of CEMA is a per se CPA violation. *Id*. The Legislature was well within its authority to do so and CEMA does not violate Article II, Section 37 of the State Constitution. That section provides "[n]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Wash. Const. art. II, § 37. Courts use a two-prong test to evaluate compliance with Article II, Section 37, assessing whether a statute (1) is a "complete act" and (2) "does not render erroneous a straightforward determination of the scope of rights or duties under existing statutes." *Associated Gen. Contractors of Washington v. State*, 544 P.3d 486, 491 (Wash. 2024) (cleaned up).

Tommy Bahama concedes CEMA is a "complete act" but argues CEMA's damages provision violates the second prong of the test by obliquely eliminating the CPA's requirement that plaintiffs demonstrate injury. Dkt. 52 at 13-15. A complete act like CEMA that adopts other statutes by reference, however, will only violate Article II, Section 37 if it renders an existing statute "erroneous" by failing to explain how the new statute impacts or modifies a straightforward determination of the scope of rights and duties created by the existing statute. *Black v. Cent. Puget Sound Reg'l Transit Auth*., 457 P.3d 453, 460 (Wash. 2020). In other words, a complete act that "merely supplements prior acts or sections thereof without repealing them does not violate section 37." *Associated Gen. Contractors of Washington*, 544 P.3d at 497 (cleaned up).

CEMA's plain language is neither confusing nor tacit in its relationship to the CPA. The Legislature clearly stated that <u>for CEMA violations</u>, each violation entitles plaintiffs to $500 per email "<u>or</u> actual damages." Wash. Rev. Code § 19.190.040 (emphasis added).[3] The Legislature thus expressly gave consumers harmed by deceptive emails two options—either obtain statutory damages or prove actual damages if they exceed the statutory floor. This is not an implied amendment to the whole CPA, nor a repeal or obfuscation of the CPA's clear statutory

---

[3] Pursuant to H.B. 2274 (2026), the Washington Legislature lowered CEMA's per violation penalty from $500 to $100, effective June 11, 2026.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 4
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

requirements in cases not involving CEMA. CEMA instead represents a straightforward legislative determination that CEMA violations, which are per se violations of the CPA, entitle plaintiffs to statutory damages.

The Washington State Supreme Court already confirmed that the Legislature made a CEMA violation a per se CPA violation with a unique damages mechanism. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1155 (Wash. 2017); *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019) (by alleging a CEMA violation, plaintiffs allege "all five elements of a CPA violation"). The *Wright* court reviewed CEMA's text message prohibitions which, like those addressing email spam, make a CEMA violation a CPA violation. Wash. Rev. Code § 19.190.060. The damages provision regarding text messages is the same as that governing email at issue here. Wash. Rev. Code § 19.190.040. Noting this damages provision "does not mention injury or causation," the State Supreme Court rejected the same arguments Tommy Bahama advances here. *Wright*, 406 P.3d at 1154. Instead, the *Wright* court held that the "reasonable" reading of CEMA's damages provision is that it does not "replace the causation or injury elements of a CPA claim" but "provides automatic damages for [CEMA] violations without condition" and therefore "injury and causation do not need to be proved to receive damages." *Id*. at 1151. The court went on to conclude that it would be "nonsensical for the legislature to write a damages provision free of preconditions, only for this court to read in elements that lawmakers did not include. Indeed, our canons of statutory construction warn against such an interpretation." *Id*. at 1154. Tommy Bahama offers a passing attempt to distinguish CEMA's texting and email provisions to try to escape this conclusion, ignoring that *Wright* determined there is functionally "no indication" that "the legislature intended to regulate text messages and e-mails differently." *Id*. at 1154.

Finally, Tommy Bahama incorrectly argues that *Montes* renders the conclusion that CEMA violates Article II, Section 37 "inescapable." Dkt. 52 at 12. *Montes*, however, makes no mention of *Wright* or of CEMA. Rather, *Montes* merely analyzed the elements of an ordinary CPA claim and whether the particular alleged injury satisfied the CPA's "injury element." *Montes*, 586 P.3d

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 5
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

at 1007. Nothing in that opinion speaks to nor changes the Legislature's and the Washington State Supreme Court's determinations that "[u]nder CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 567 P.3d at 42. This does not amend, repeal, modify, or obscure the CPA in a way that offends Article II, Section 37—again, CEMA simply states how damages are calculated when the alleged infraction involves commercial emails. And that statutory setup makes sense in the context of the particularly diffuse problem of deceptive email spam. As the *Wright* court observed while citing the AGO's amicus brief, "proof of injury and causation increases the burden on private consumers bringing CPA claims and would likely diminish CEMA's deterrent effect." 406 P.3d at 1155. This Court should follow CEMA's plain language and the State Supreme Court's interpretation of it in *Brown* and *Wright*, rather than invalidating or severing the statute based on Tommy Bahama's sweeping (and incorrect) argument that CEMA implicitly altered the CPA. There is no constitutional problem, rather the statutes "just apply to different situations." *Associated Gen. Contractors of Wash.*, 544 P.3d at 489.

**C.    The *Brown* Decision Confirmed CEMA's Plain Language and Presents No Fair Notice Issue**

CEMA prohibits commercial emails that contain any "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Tommy Bahama's new fair notice challenge essentially asks this Court to (1) add words to CEMA's plain language and conclude the statute only prohibits emails with subject lines containing deceptive information about the commercial nature of the email message, and (2) find that the Washington State Supreme Court's decision in *Brown* was so shocking and unexpected, despite it simply applying CEMA's plain meaning, that to apply that same meaning to spam sent before *Brown* violates the U.S. Constitution. These late requests, which rely on Tommy Bahama's skewed interpretations of AGO consumer resource webpages and a single pre-*Brown* judicial order, directly contradict the plain meaning analysis in *Brown*, and do not meet the bar for a constitutional fair notice challenge. The Court should reject them.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 6
(2:25-cv-01969-BJR)

**1.    The standard for providing fair notice is especially low for civil statutes like CEMA and the CPA that only regulate commercial activities**

A statute is unconstitutionally vague only if it does not provide sufficiently fair notice of the forbidden conduct. What is sufficient to constitute "fair notice" depends on the subject matter of the statute in question. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249 (3d Cir. 2015). "[E]conomic regulation is subject to a less strict vagueness test" than laws that "threaten[] to inhibit the exercise of constitutionally protected rights" such as "the right of free speech or of association." *Village of Hoffman*, 455 U.S. at 498-99; *see also Fed. Trade Comm'n v. Kochava*, 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) (citing *Boutilier v. INS*, 387 U.S. 118, 123 (1967)); *see Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1329-30 (W.D. Wash. 2024). Because this case does not involve criminal penalties, protected speech, or another independently protected constitutional right—and instead implicates economic activity—the fair notice standard here is especially low.

When the challenged statute is a civil statute regulating economic activity, "a party lacks fair notice [only] when the relevant standard is so vague as to be no rule or standard at all." *Wyndham Worldwide*, 799 F.3d at 250 (internal quotation marks omitted); *see Boutilier*, 387 U.S. at 123. Indeed, precision in the statutory text or judicial interpretation is unnecessary; a civil statute regulating economic activity is not overly vague if it "prohibits conduct according 'to an imprecise but comprehensible normative standard.'" *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Under this standard there will be "borderline cases" where, ex ante, it is not entirely clear whether conduct falls within the prohibitions of the civil statute. But that lack of specificity is not a constitutional problem in this context. "[U]nder a due process analysis a company is not entitled to such precision as would eliminate all close calls." *Wyndham Worldwide*, 799 F.3d at 255-56; *see Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (Posner, J.) ("A statute

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS - 7
(2:25-cv-01969-BJR)

may contain a serious ambiguity; this will not in itself make the statute vague . . . . A statute that contains one or several ambiguities that can be dispelled at a stroke by interpretation is not open to that objection and therefore is not vague in the constitutional sense.").

Finally, a defendant cannot complain that a statute is vague as applied to them (or facially) if they had actual notice that their conduct was proscribed. *See United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012) (holding defendants "had actual notice that their use of National Forest System lands violated Forest Service regulations" and "[a]ccordingly, there is no due process problem here."); *United States v. Halverson*, No. 22-10057, 2023 WL 4311629, at *2 (9th Cir. July 3, 2023).

In short, because the allegations in this case involve allegedly untrue and deceptive commercial speech, the standard for notice is especially low.

**2.    The Washington State Supreme Court's decision in *Brown* did not render CEMA unconstitutionally vague**

Tommy Bahama's fair notice argument is based on faulty premises. Tommy Bahama begins by incorrectly asserting that before the April 2025 *Brown* decision, the Washington State AGO website and *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082 (W.D. Wash. 2023) set out "authoritative interpretations of CEMA" that the statute "only" prohibited "email subject lines that concealed the commercial nature of the email." Dkt. 52 at 13.

At the outset, this argument completely elides the statute's plain language. If the meaning of a statutory provision "is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Wright*, 406 P.3d at 1151 (citation omitted). Here, the ordinary meaning of Wash. Rev. Code § 19.190.020(1)(b) was clear before 2025: it undisputedly prohibits any email that "contains false or misleading information in the subject line." CEMA nowhere limits that provision to information about the commercial nature of the email. Such "omissions are deemed to be exclusions." *Id*. at 1153 (citing *In re Det. of Williams,* 55 P.3d 597, 604 (Wash. 2002)); *see also State v. Delgado*, 63 P.3d 792, 794 (Wash. 2003) (reviewing courts

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 8
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

cannot add words or clauses to a statute when the legislature has chosen not to include that language). Tommy Bahama might not like the *Brown* court's read of CEMA's plain language, but it cannot relitigate it here through a fair notice challenge.

Tommy Bahama also mischaracterizes the AGO's position on this issue. First, Tommy Bahama is incorrect in its repeated assertions that the Attorney General shared its reading of CEMA prior to *Brown*. Tommy Bahama neglects to mention that the AGO filed an amicus brief in *Brown* wherein it publicly argued that subsection 1(b) is <u>not</u> limited to misrepresentations about the commercial nature of the email. Declaration of Claire McNamara, Ex. A. The AGO was thus not "surprised" as Tommy Bahama asserts when the Washington State Supreme Court came to that same conclusion in its decision in *Brown*. Dkt. 52 at 3.

Second, the AGO webpages Tommy Bahama purported to rely on as "guidance to help businesses" are in fact consumer resource pages that do not support Tommy Bahama's position. Dkts. 52 at 14, 53-1, 53-2, 53-3. These pages contain a prominent link to "File a Complaint" with the AGO. Dkts. 53-1, 53-2, 53-3. Even the older version of this page explicitly states that "a subject line is considered legally deceptive if it has the tendency or capacity to deceive consumers." Dkt. 53-1. The page went on to say that "[o]ne of the easiest ways to tell if an email violates Washington's spam statute is to take a look at the subject line of the email and compare it to the text of the message." *Id.* The <u>easiest</u> way to spot a piece of spam is, of course, not the <u>only</u> way to identify spam. The page continued, noting that "you [i.e., the consumer] may not need to file [a] complaint" if "the subject line clearly represents what is being sent." *Id.* Immediately below that statement, however, the page listed other questions a consumer might ask themselves to determine whether a piece of spam is deceptive, including "[d]oes it create a false sense of urgency?" *Id.* This is exactly the kind of subject line at issue here. Dkt. 36 at 2, 5-9. Tommy Bahama's strained reading of consumer resource webpages—all of which explicitly invite consumers to submit complaints about spam emails creating a false sense of urgency—is no basis to invalidate CEMA's plain meaning. Dkts. 53-1, 53-2, 53-3.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 9
(2:25-cv-01969-BJR)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Finally, even if the Court credits Tommy Bahama's litigation position that it was confused by the AGO's consumer resource page, these exhibits are not Attorney General Opinions constituting an "authoritative interpretation" of CEMA. Formal AGO opinions may be given weight, but even such opinions are not controlling in matters of statutory interpretation. *Freeman v. State*, 309 P.3d 437, 442 (Wash. 2013). Consumer resource webpages are not authoritative, formal AGO opinions. Washington State Attorney General Office, Attorney General Opinions, https://www.atg.wa.gov/AGOopinions/opinion (stating AGO limits provision of "official opinions on questions of law" to responding to requests from "designated public officials on issues arising in the course of their duties"); *see also Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1340 (W.D. Wash. 2018) (distinguishing a state Commission's pamphlets, PowerPoint presentation, and meeting minutes from a 'formal position' of the Commission).

Tommy Bahama further asserts that "[c]ourts" interpreted CEMA in line with its interpretation of the AGO's "guidance" but cites only one case, *Chen*. Dkt. 52 at 14. Notably, however, in *Chen*, this Court declined to give "any weight" to citations to the AGO's website and a prior CEMA enforcement action because "neither of these are official opinions by the AG." 655 F. Supp. 3d at 1093. Additionally, no other court adopted *Chen*'s interpretation of CEMA's language. Instead, the next time this issue was squarely presented to this Court, it certified the question to the Washington Supreme Court, which issued the *Brown* decision Tommy Bahama now seeks to invalidate. These circumstances are thus plainly distinguishable from the authority Tommy Bahama relies on: *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976 (9th Cir. 2008), and *United States v. AMC Ent., Inc.*, 549 F.3d 760 (9th Cir. 2008). Dkt. 52 at 14. *BMW* did not hold the punitive damage laws at play unconstitutional but rather concluded they had been unconstitutionally applied to render an excessive award. 517 U.S. at 573-586. *Shark Fins* addressed the fact that a commercial charter that did nothing to benefit a foreign fishing vessel could not have anticipated being subject to a law that solely governed boats that "aid" or "assist"

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 10
(2:25-cv-01969-BJR)

foreign fishing vessels. 520 F.3d at 981. Finally, in *AMC*, there was a circuit split amongst numerous courts about how to interpret a provision of the Americans with Disabilities Act, and all courts addressing the provision agreed it was ambiguous. 549 F.3d 764-67. Accordingly, the Ninth Circuit concluded that it was unfair to expect the theater franchise defendant to guess at which interpretation to follow when many different circuits disagreed and the Department of Justice, the entity that enforced the provision, had announced no position. *Id*. By contrast, Tommy Bahama's sole citation to *Chen* does not support a constitutional fair notice challenge, especially, again, in light of CEMA's plain, unambiguous language.

## IV.   CONCLUSION

The relevant text of CEMA has been plain since the 1990s, and the statute's relationship to the CPA is explicit. For the foregoing reasons, the State respectfully requests that the Court deny Tommy Bahama's second motion to dismiss with respect to its Article II, Section 37 and fair notice challenges.

DATED this 26th day of June, 2026.

NICHOLAS W. BROWN
Attorney General

*/s Claire McNamara*
BEN BRYSACZ, WSBA #54683
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-474-7744
ben.brysacz@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum does not exceed fifteen (15) pages, in compliance with the Court's Standing Order for All Civil Cases (Dkt. 7).*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S SECOND MOTION TO
DISMISS - 11
(2:25-cv-01969-BJR)